# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1684

AMERICAN PATRIOT INSURANCE AGENCY, INC., *et al.*,

*Plaintiffs-Appellants*,

v.

MUTUAL RISK MANAGEMENT, LTD., *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 2728—**Ruben Castillo**, *Judge.*

_____

ARGUED OCTOBER 31, 2003—DECIDED APRIL 16, 2004

_____


Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The district judge dismissed this diversity suit, after several months of discovery and fruitless settlement negotiations, on the basis of a forum-selection clause that designated Bermuda as the place for litigating any dispute concerning a contract between the plaintiffs and the Mutual defendants, a group of affiliated corporations. Another defendant, Cunningham-Lindsey, Inc., is unaffiliated; we discuss its appeal at the end of this opinion. The plaintiff's challenge to the dismissal of the

Mutual defendants presents questions primarily of waiver of venue and the scope of the forum-selection clause.

American Patriot Insurance Agency, the principal plaintiff and the only one we need discuss, specializes in selling liability insurance to roofing contractors. Two Mutual affiliates that are not parties to the litigation issued insurance policies to the plaintiff's customers, with the plaintiff acting as agent, while Mutual Indemnity, one of the Mutual companies that is a party, reinsured those policies. The relations between the plaintiff and the Mutual group of companies were spelled out in a series of contracts. The principal one was a "Shareholder Agreement" between the plaintiff and Mutual Holdings, another Mutual affiliate that is not a defendant, whereby the plaintiff received its share of the income generated by the insurance program in the form of a dividend payment on preferred stock in Mutual Holdings purchased by the plaintiff. The Agreement states that it "shall be exclusively governed by and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda."

According to the complaint, which is the only source of facts, the insurance program went into effect but produced large losses for the plaintiff. An employee of one of the Mutual defendants persuaded the plaintiff to buy additional reinsurance from Mutual Indemnity. The purchase agreement states that "formal acknowledgment of this revision to the Program will be contained in the revisions of the Shareholder Agreement." The plaintiff continued to lose money and finally brought this suit, charging that the Mutual defendants had committed breaches of contract and had fraudulently induced the plaintiff to post letters of credit to secure its obligations under the Shareholder Agreement. There are additional charges against the Mutual defendants but they need not be discussed.

The suit was filed in April of 2002, but on joint motion of the parties proceedings were stayed while they discussed settlement and engaged in informal discovery. In December, the Mutual defendants began bankruptcy proceedings in Bermuda and the following month filed a motion in the present suit, under Fed. R. Civ. P. 12(b)(3), which the district judge granted, to dismiss the suit for improper venue, citing the forum-selection clause. The plaintiff argues that the defendants' nine-month delay in moving for dismissal operated to waive or forfeit their objection to the Chicago venue. The plaintiff interprets Rule 12(h)(1) to require a defendant to interpose an objection to venue at the earliest possible opportunity and notes several cases that contain language supportive of its position, notably our decision in *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830-31 (7th Cir. 1995).

In a system of case law there is a tendency, as we noted the other day in *Peaceable Planet, Inc. v. Ty, Inc.*, No. 03-3452, 2004 WL 692166, at *3 (7th Cir. Apr. 2, 2004), for a drift away from the language of a statute or a rule, with cases increasingly quoting previous cases rather than returning to the language and purpose of the provision underlying the judge-built superstructure. Sometimes there are compelling reasons for such a drift but often it is due just to imprecision of paraphrase. Rule 12(h)(1) of the civil rules requires that two of the multitudinous defenses to a suit that a defendant might plead—lack of personal jurisdiction by virtue of defective service of process or otherwise, and improper venue—be pleaded earlier than any of the others. These defenses are strictly for the convenience of the defendant; he doesn't have to engage in discovery to know whether the forum chosen by the plaintiff is a convenient one; and so there is no reason to allow him to lie back, wait until the plaintiff has invested resources in preparing for suit in the plaintiff's chosen forum, wait perhaps to assess his prospects in that forum, and only then demand that the case

start over elsewhere. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 914 (7th Cir. 1994); *Flory v. United States*, 79 F.3d 24, 25 (5th Cir. 1996); *Schneider v. National R.R. Passenger Corp.*, 72 F.3d 17, 20 (2d Cir. 1995) (per curiam); *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries Fund*, 967 F.2d 688, 691-92 (1st Cir. 1992).

So improper venue must be pleaded early, but not at the earliest possible opportunity. At least that is not what the rule says. It says that an objection to venue is waived if "neither made by motion under this rule nor included in a responsive pleading" (or in an amendment to such a pleading that a party can make without the court's permission). The defendant can move as early as he wants but he is not required to file a motion. He has a right to wait until he files his answer. Thus he needn't object at the earliest possible opportunity, which might be five minutes after receiving a copy of the complaint.

But a right can be waived or forfeited. If the defendant tells the plaintiff that he is content with the venue of the suit, or by words or actions misleads the plaintiff into thinking this or the court into becoming involved in the case so that there would be wasted judicial effort were the case to be dismissed to another forum, or if he stalls in pleading improper venue because he wants to find out which way the wind is blowing, then conventional principles of waiver or equitable estoppel come into play and if invoked by the plaintiff block the challenge to venue. *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993); cf. *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732-33 (7th Cir. 1991) (per curiam); *Yeldell v. Tutt*, 913 F.2d 533, 538-39 (8th Cir. 1990).

The district judge, though he said that the Mutual defendants had maneuvered to delay the dismissal of the suit

while they prepared their bankruptcy filing in Bermuda so that they could funnel all their legal disputes into a Bermuda court, found no waiver or estoppel. Actually, he was mistaken to suspect the defendants of behaving deviously. Had they wanted to funnel the suit to Bermuda all they would have had to do was move under Rule 12(h)(1); they had no motive to delay the motion if their overriding desire was to consolidate all their legal troubles in a friendly forum. And anyway the plaintiff well knew that there was going to be a bankruptcy proceeding in Bermuda.

What is true is that by conducting settlement discussions and responding to discovery requests in Chicago, the Mutual defendants—which are represented by a Chicago law firm—demonstrated a certain comfort with negotiating, and engaging in some very preliminary pretrial litigation activity, in Chicago. But the plaintiff would have been unreasonable to infer from this that the defendants would not plead improper venue, given the forum-selection clause and the fact that they are all citizens or residents either of Bermuda or Pennsylvania, rather than of Illinois. Nor was the plaintiff put to any inconvenience by the delay in the filing of the defendants' motion to dismiss. Nor were they testing the wind, for the district court made no rulings until it dismissed the suit; and by the same token the delay in pleading improper venue caused no wasted motion by the court. Furthermore, considerations of economy argue against the filing of *any* motions while parties are trying to reach a settlement, since if they do settle the case any motions filed in it will be moot.

So the motion to dismiss for improper venue was not improperly delayed, and we must decide whether it was properly granted on the basis of the forum-selection clause. The plaintiff argues that its disputes with the Mutual defendants (and with Cunningham-Lindsey as well, but that

is for later) concern other contracts, which are part of the overall insurance program but do not contain forum-selection clauses, rather than the Shareholder Agreement; that they are not purely contractual disputes, because fraud is also charged; and that none of the Mutual defendants was actually a party to the Shareholder Agreement—for remember it was between the plaintiff and Mutual Holdings, which is not a defendant. These are really the same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit. If this were true, such clauses would be empty. It is not true. *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 693-95 (8th Cir. 1997); *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), overruled on other grounds, *Lauro Lines v. Chasser*, 490 U.S. 495 (1989).

The contracts, including the Shareholder Agreement, are a package. The Shareholder Agreement happens to be the only site of the forum-selection clause, but no reason has been suggested for why the parties would have wanted disputes under that agreement to be litigated in Bermuda but not disputes under the other pieces of the jigsaw puzzle. The Mutual defendants that are the signatories of the other contracts with the plaintiff are all affiliates of Mutual Holdings, the signatory of the Shareholder Agreement; all worked together to create and administer the insurance program; and disputes arising under the other contracts therefore "concern" the Shareholder Agreement.

As for the fact that the defendants are charged with fraud rather than breach of contract, this can get the plaintiff nowhere in its efforts to get out from under the forum-selection clause. Not only does the clause refer to disputes concerning the contractual relationship between the parties,

however those disputes are characterized. More important, a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance. *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587, 590 (7th Cir. 2001); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360-61 (2d Cir. 1993); *Lambert v. Kysar*, *supra*, 983 F.2d at 1121-22; *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, *supra*, 709 F.2d at 203. The reason is not that contract remedies always supersede fraud remedies in a case that arises out of a contract; sometimes they do, sometimes they don't. Compare *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865-67 (7th Cir. 1999), with *Western Industries, Inc. v. Newcor Canada Ltd.*, 739 F.2d 1198, 1206 (7th Cir. 1984). It is that the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

Nor is a forum-selection clause to be defeated by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates. *Frietsch v. Refco, Inc.*, *supra*, 56 F.3d at 827-28; *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993); *Roby v. Corporation of Lloyd's*, *supra*, 996 F.2d at 1358-60. And as for the plaintiff's argument that the word "concerning" in the Shareholder Agreement's forum-selection clause is narrower than the more common term "arising out of," this is semantic quibbling. See *id.* at 1361; cf. *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 762 (D.C. Cir. 1988).

But now we must consider the anomalous status of Cunningham-Lindsey, which had been hired by the Mutual

affiliate that issued the insurance policies to the plaintiff's customers to administer claims under the policies. Cunningham-Lindsey's contract with the affiliate specified that Texas law would govern any dispute arising under it and that such disputes would be submitted to binding arbitration. The plaintiff contends that Cunningham-Lindsey administered the claims incompetently, to the injury of the plaintiff, which claims to be a third-party beneficiary. Cunningham-Lindsey is not affiliated with the Mutual defendants and cannot be thought a party to the forum-selection clause and therefore entitled to invoke it—and anyway it never objected to venue. Acknowledging the district judge's error in dismissing it for improper venue, Cunningham-Lindsey asks us to affirm its dismissal on the grounds that it was not a party to any contract with the plaintiff, that any dispute it might have with the plaintiff would be governed by Texas law, which is reticent about conferring third-party beneficiary status, and that if the plaintiff is a third-party beneficiary of Cunningham-Lindsey's contract with the Mutual defendants, then any dispute concerning that contract would have to be referred to arbitration because the contract, as we have noted, provides for arbitration of any disputes arising under it.

Insofar as the plaintiff's third-party beneficiary claim is concerned, the plaintiff is indeed bound by the choice of law and arbitration clauses in the contract. *American United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d 921, 930-31 (7th Cir. 2003); *Industrial Electronics Corp. of Wisconsin v. iPower Distribution Group, Inc.*, 215 F.3d 677, 680 (7th Cir. 2000); *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1075-77 (5th Cir. 2002); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001). But the fact that a contract specifies arbitration as the mode of resolving disputes arising under it is not a ground for dismissing a suit for breach of the

contract. Rather it is a ground for an order to arbitrate, which Cunningham-Lindsey has not sought, doubtless because it doesn't think that the plaintiff is a third-party beneficiary of the contract under Texas law. Whether it is or not is an issue that remains for consideration by the district court, along with a tort claim that the plaintiff also makes against Cunningham-Lindsey. If the court finds that the plaintiff is a third-party beneficiary, it will then have to determine whether Cunningham-Lindsey can still demand arbitration and, if so, whether the plaintiff's tort claim would be encompassed within such a demand.

The dismissal of Cunningham-Lindsey as a defendant is reversed and the case against it remanded, but in all other respects the district court's decision is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.


A true Copy:

        Teste:


                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*