**DEXTER AXLE COMPANY,**
Appellant–Plaintiff,

v.

**BAAN USA, INC., Appellees–**
Defendants.

No. 20A03–0502–CV–87.

Court of Appeals of Indiana.

Aug. 22, 2005.

**46**

Charles P. Edwards, T. Joseph Wendt, Mark J. Crandley, Barnes & Thornburg LLP, Indianapolis, for Appellant.

John D. LaDue, Boveri Murphy Rice Ryan & LaDue, South Bend, for Appellee.

Daniel D. Zegura, Rogers & Hardin LLP, Atlanta, GA, Pro Hac Vice.

## OPINION

BAKER, Judge.

Plaintiff-appellant Dexter Axle Company (Dexter) appeals from the trial court's order granting defendant-appellee Baan USA., Inc.'s (Baan)[1] motion to dismiss for lack of jurisdiction. In particular, Dexter contends that the trial court erred in concluding that a forum selection clause contained in the Consulting Services Agreement between the parties was binding as to the Software Agreement and required Dexter's claims to be litigated in California. Dexter further argues that the trial court erred in granting Baan's motion to dismiss before Dexter had the opportunity to fully conduct discovery on jurisdictional issues. Finding no error, we affirm the judgment of the trial court.[2]

### FACTS

On December 27, 2002, Baan and Dexter entered into a Software License and Support Agreement (Software Agreement) under which Baan licensed to Dexter use of several of Baan's software products including its Enterprise Resource Planning (ERP) software. ERP software is "complex business software which integrates a company's business resources and functions and can be used by manufacturing businesses with multiple manufacturing plants, processing functions and product configuration needs." Appellee's Br. p. 5. Pursuant to the Software Agreement, Dexter paid Baan more than $400,000 in return for five pieces of software and access to a telephone line for technical support.

The Software Agreement contains the following relevant clauses: (1) an integration clause stating that it "contains the entire and exclusive agreement of the parties with respect to the subject matter of the Agreement," (2) a clause defining "'Agreement" as the "Agreement . . . dated December 27th, 2002," and (3) a choice of law provision requiring that the contract be interpreted and construed in accordance with the laws of Virginia. Appellant's App. p. 35. It contains no forum selection clause.

Because ERP software is not fully functional "off the shelf," the user typically engages consultants to "implement" the software, which involves configuring the software and business processes and train-

---

1. Dexter included an entity named "Baan Company" in its caption on appeal. The record reveals that no entity named "Baan Company" or "Baan Company, Inc." has been served with process or otherwise joined as a party. The only defendant served with process and joined as a party is Baan USA, Inc.

2. We hereby deny Dexter's motion for oral argument.

ing users to use the software. Appellee's Br. p. 5. Accordingly, on January 28, 2003, the parties entered into a second agreement—the Consulting Services Agreement (Consulting Agreement)—whereby Baan agreed to provide certain consulting services related to implementing the ERP software for Dexter. The project's goal was to implement an ERP computer system consisting of software, hardware, and implementation consulting services at Dexter's corporate office and two plant facilities located in Elkhart.

The Consulting Agreement contains a choice of law and forum selection clause: "This Agreement will be construed and controlled by the laws of the State of California, U.S.A. without reference to its conflict of laws principles, and the parties mutually consent to exclusive jurisdiction and venue in the state and federal courts sitting in Santa Clara County, California." Appellant's App. p. 74. The Consulting Agreement defines "Agreement" as the "Master Service Agreement" entered into under the "terms and conditions" set forth in that agreement and executed by the parties. *Id.* p. 72. Additionally, it contains an integration clause rendering it "the entire agreement between the parties with respect to the subject matter hereof and will merge all prior and contemporaneous communications." *Id.* p. 75.

On July 7, 2003, Dexter went "live" on the ERP software. Appellee's Br. p. 6. When the ERP computer system went live, according to Dexter it did not perform as warranted and represented by Baan. Indeed, Dexter alleges that the systemic defects were so substantial that the ERP computer system could not perform even basic functions, leading to, among other things, errors in invoices and late delivery of Dexter's products. On August 13, 2003, Dexter notified Baan that it intended to rescind or terminate the Software Agree-

ment unless Baan was able to cure the alleged deficiencies.

Dexter eventually terminated both agreements, revoked acceptance of the ERP software under the Software Agreement, and on October 13, 2003, filed a complaint against Baan for damages. Dexter asserted twelve claims: breach of the Software Agreement and the Consulting Agreement, two claims of breach of express warranties, breach of implied warranties, fraudulent inducement of the Software Agreement and the Consulting Agreement, fraud, negligence, constructive fraud, statutory deception, and unjust enrichment. Dexter's claims related to Baan's conduct and representations to Dexter before the parties entered into the agreements, the ERP software, and the consulting services provided by Baan.

On June 8, 2004, Baan moved to dismiss Dexter's complaint pursuant to, among other things, Indiana Trial Rule 12(B)(2) for lack of jurisdiction. Baan based its argument on the forum selection clause contained in the Consulting Agreement. Dexter had previously served written discovery on Baan, and on July 2, 2004, Baan moved for a stay of discovery relating to the underlying merits of Dexter's case pending the trial court's ruling on its motion to dismiss. Baan never opposed—and the trial court never limited—any discovery relating to the jurisdictional issues raised by Baan's motion to dismiss. On August 26, 2004, following briefing and a period of time for jurisdictional discovery, the trial court heard argument on both of Baan's motions.

On January 27, 2005, the trial court granted Baan's motion to dismiss for lack of jurisdiction, concluding that both parties are businesses and had equal bargaining power, that Dexter failed to identify any compelling reason why it should be able to evade the forum selection clause, and that

Dexter failed to show that enforcement of the forum selection clause would be unreasonable and unjust. Accordingly, the trial court applied Indiana law and dismissed Dexter's complaint because the parties mutually consented to exclusive jurisdiction and venue in California. The trial court did not rule on Baan's discovery motion. Dexter now appeals.

## DISCUSSION AND DECISION

### I. Motion to Dismiss

Dexter contends that the trial court erred in granting Baan's motion to dismiss for lack of jurisdiction. In particular, Dexter argues that the trial court erred in dismissing Dexter's complaint because the Software Agreement did not contain a forum selection clause and the Consulting Agreement's forum selection clause applies only to Dexter's contract claims arising under that agreement.

As we consider these arguments, we note that when reviewing a motion to dismiss for lack of personal jurisdiction based on Indiana Trial Rule 12(B)(2), we apply a de novo standard of review. *Grott v. Jim Barna Log Sys.-Midwest, Inc.*, 794 N.E.2d 1098, 1101–02 (Ind.Ct.App.2003), *trans. denied*. Personal jurisdiction is a question of law—it either exists or it does not. *Id.* at 1102. The question of its existence is not entrusted to a trial court's discretion. *Id.* When a defendant attacks the jurisdiction over his person, he bears the burden of proof upon that issue by a preponderance of the evidence, unless the lack of jurisdiction is apparent from the face of the complaint. *Id.*

### A. The Forum Selection Clause

Initially, we observe that forum selection provisions are enforceable if they are reasonable and just under the circumstances and if there is no evidence of fraud

or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court. *Id.* Additionally, the provision must have been freely negotiated. *Id.* Moreover, "[e]ven where the forum-selection clause establishes a remote forum for resolution of conflicts, 'the party claiming [unfairness] should bear a heavy burden of proof.'" *Id.* (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).

### 1. Just and Reasonable Under the Circumstances

Before we can set aside an agreed-to forum selection clause, Dexter must clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching. *Grott*, 794 N.E.2d at 1104. Dexter first argues that the forum selection clause is unenforceable because it would be inconvenient to transport its witnesses and evidence to California. We have held in the past, however, that "[a] claim that unnecessary travel expenses will result from trial in the contractual forum is far from sufficient, by itself, for this court to conclude that an otherwise reasonable and freely negotiated contractual provision is unenforceable." *Id.* To hold otherwise would be to ignore the bargain that was struck between the parties, which we will not do. It is apparent to us that any alleged inconvenience related to litigating in California was foreseeable to the parties at the time they entered into the Consulting Agreement. Dexter cannot now try to avoid a contractual provision to which it agreed based upon an inconvenience that was foreseeable when it signed the contract. Accordingly, the forum selection clause is not unreasonable and unjust because it would be inconvenient for Dexter to litigate in California.

■ Dexter next contends that the forum selection clause is unreasonable and unjust because it would not be enforced by California courts. We note initially that the primary matter at issue here is whether the clause is enforceable in *Indiana* courts. But we will briefly address this argument to the extent that Dexter is claiming that enforcing this clause would deprive it of its day in court in California.

California law and policy strongly favor enforcement of forum selection clauses. *See, e.g., Alexander v. Superior Ct.,* 114 Cal.App.4th 723, 730, 8 Cal.Rptr.3d 111 (2003). And although it is true, as pointed out by Dexter, that none of the operative facts occurred in California and none of the witnesses or companies are located in California, the choice of forum "need only have a 'reasonable' basis even if it is unrelated to the domiciles or transactions involved." *Cal–State Bus. Prods. & Servs., Inc. v. Ricoh,* 12 Cal.App.4th 1666, 1682, 16 Cal.Rptr.2d 417 (1993). Here, the parties' choice of California as the proper forum is reasonable inasmuch as the transaction involved the licensure of computer software and implementation of complicated ERP software and California courts have acquired significant expertise in negotiating disputes regarding complex technological issues. Nothing in the record before us leads us to conclude that a California court would do anything other than enforce this forum selection clause. Accordingly, Dexter has not met its burden of showing that enforcing this clause would be unjust and unreasonable under the circumstances.

### 2. Freely Negotiated

■ Dexter must also show that the forum selection provision was not freely negotiated. To determine whether a forum selection provision was freely negotiated, courts apply a fact-sensitive test involving a comparison of the bargaining position of the parties to the contract. *Grott,* 794 N.E.2d at 1102. A contract is unconscionable if there exists a great disparity in bargaining power between the parties, leading the weaker party to sign the contract unwillingly or without awareness of its terms. *Id.* Indiana courts recognize the principle that parties are free to enter into contracts and, indeed, presume that contracts represent the freely bargained agreement of the parties. *Id.* A standardized contract is not unenforceable merely because of the unequal bargaining power of the parties—there must also be a showing that the contract is unconscionable. *Id.*

Here, the record reveals that Baan and Dexter are both sophisticated and knowledgeable businesses that entered into an arms-length business transaction after lengthy negotiations. Dexter has offered no evidence to suggest that this transaction was not freely negotiated or that the contract is unconscionable. If Dexter did not want to litigate future claims against Baan in California, it was free to negotiate other terms or take its business elsewhere. Because we presume that contracts represent the freely bargained agreement of the parties, we conclude that this agreement represents the freely negotiated wishes of both parties. Dexter has not shown otherwise. Accordingly, Dexter has not met its burden of establishing that the forum selection clause should not be enforced, and the trial court properly found the provision to be valid and binding.

### B. Applicability of the Forum Selection Clause

Having found that the forum selection clause in the Consulting Agreement is valid, binding, and enforceable, we must next consider whether it applies to any or all of Dexter's claims against Baan. Dexter contends that it applies only to the contract-

based claims arising out of the Consulting Agreement; Baan argues that it applies to all twelve of Dexter's claims.

■■■■ As to Dexter's tort claims that arose out of the Consulting Agreement, we agree with our colleagues on the Seventh Circuit, who recently addressed a very similar set of facts:

> As for the fact that the defendants are charged with fraud rather than breach of contract, this can get the plaintiff nowhere in its efforts to get out from under the forum-selection clause. Not only does the clause refer to disputes concerning the contractual relationship between the parties, however those disputes are characterized. More important, a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent enforcement. The reason is not that contract remedies always supersede fraud remedies in a case that arises out of a contract; sometimes they do, sometimes they don't. It is that the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (citations omitted). We completely agree with this analysis. Accordingly, Dexter's tort and statutory claims that arise out of the Consulting Agreement are subject to the forum selection clause and must be litigated in California.

■■■■ We next turn to Dexter's claims, breach of contract and otherwise, that

arise out of the Software Agreement. Dexter argues that the two contracts are separate, discrete, and independent, and as a result, the forum selection clause in the Consulting Agreement should not be imposed upon claims that arise out of the Software Agreement. Baan responds with a contention that in fact, the two agreements are intertwined and interrelated and all of Dexter's claims arise from the same transaction; therefore, the forum selection clause should apply to all claims arising out of either contract.

We find the recent *American Patriot* case out of the Seventh Circuit to be instructive. The parties involved in that case were an insurance agent, its reinsurer, and certain related parties. 364 F.3d at 884. Two affiliates of the defendant Mutual Risk Management, Ltd., who were not parties to the lawsuit, issued insurance policies to customers of the plaintiff, American Patriot, with American Patriot acting as agent. Mutual Indemnity, who was a party to the lawsuit, reinsured those policies. The relations between American Patriot and the Mutual companies were spelled out in a series of contracts, with the "principal" one being a Shareholder agreement between American Patriot and a non-party Mutual company. *Id.* at 886. After a series of events, American Patriot filed a complaint alleging breach of contract and fraudulent inducement.

The Shareholder Agreement contained a forum selection clause that selected Bermuda as the place for litigating any disputes. The other contracts between the parties did not contain a forum selection clause. The defendants moved to dismiss the complaint based on, among other things, the forum selection clause. American Patriot made the following arguments in response: (1) its claims arose not out of the Shareholder Agreement but out of the contracts that did not contain a forum

selection clause; (2) its claims were not purely contractual in nature because fraud was also charged; and (3) none of the Mutual defendants were actually parties to the Shareholder Agreement. *Id.* at 888. The Seventh Circuit concluded that:

> [t]hese are really the same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit. If this were true, such clauses would be empty. It is not true.

*Id.* As it considered the multiple agreements between the parties and the multiple Mutual entities, the court determined that:

> [t]he contracts, including the Shareholder Agreement, are a package. The Shareholder Agreement happens to be the only site of the forum-selection clause, but no reason has been suggested for why the parties would have wanted disputes under that agreement to be litigated in Bermuda but not disputes under the other pieces of the jigsaw puzzle. The Mutual defendants that are the signatories of the other contracts with the plaintiff are all affiliates of Mutual Holdings, the signatory of the Shareholder Agreement; all worked together to create and administer the insurance program; and disputes arising under the other contracts therefore "concern" the Shareholder Agreement.

*Id.* at 889. Accordingly, the court affirmed the trial court's dismissal of American Patriot's complaint.

The facts in the instant case are very similar to those in *American Patriot.* Here, Dexter and Baan entered into a single business transaction whereby Dexter sought to obtain from Baan licensing and implementation of an ERP computer system. Indeed, Dexter's complaint references conversations between the parties regarding "retaining Baan to provide software and consulting services to establish an ERP computer system . . . ." Appellant's App. p. 13. As in *American Patriot,* the parties' business relationship here was governed by two contracts, only .one of which contained a forum selection clause. Given the evidence before us, we are persuaded that both contract were part of a single business transaction and are pieces of the same "jigsaw puzzle." Accordingly, the forum selection clause in the Consulting Agreement applies to all claims—including tort and statutory claims—arising out of either agreement.

Dexter further argues that it entered into the two contracts with two separate entities—Baan Company, Inc. and Baan USA. As noted above, however, there is no such entity as "Baan Company, Inc." While the Consulting Services Agreement referred to "Baan Company, Inc.," that appears to have been a scrivener's error inasmuch as that entity does not appear to exist. Moreover, even if it did we would reach the same result based upon the above analysis in *American Patriot.*

■ Finally, Dexter contends that the trial court's order should be reversed because it mistakenly referred to forum selection clauses in both agreements. Apparently, the trial court concluded that the Software Agreement explicitly required litigation in California. While this conclusion was error, it was harmless inasmuch as we have already concluded that even though the Software Agreement does not contain a forum selection clause, Dexter's claims arising out of the agreement must be litigated in California pursuant to the provision in the Consulting Agreement. Accordingly, we conclude that the trial court properly dismissed all of Dexter's claims pursuant to the forum selection provision in the Consulting Agreement.

## II. Additional Discovery

■ Dexter also argues that the trial court erred in granting Baan's motion to dismiss before Dexter had the opportunity to fully conduct discovery on the jurisdictional issues. Dexter served written discovery on Baan, and after Baan filed its motion to dismiss it asked the trial court to stay all discovery pertinent to the merits of the case pending a ruling on the motion to dismiss. The trial court granted Baan's motion to dismiss and never ruled on the motion to stay discovery.

Dexter's primary argument centers on the existence, or lack thereof, of Baan Company, Inc. Before the trial court ruled on Baan's motion to dismiss, Baan responded to two of Dexter's interrogatories regarding the identity of the contracting Baan companies. In its verified response to the interrogatories, Baan stated that although "the term 'Baan Company' was sometimes used generically to describe the Baan software business, Baan USA is not aware of a separate legal entity called 'Baan Company, Inc.'," and further stating that Baan USA was the contracting party to the Consulting Agreement. Appellant's App. p. 221–22. Baan never responded to Dexter's other interrogatories, requests for admission, or requests for production of documents. Dexter contends that Baan's limited interrogatory responses are insufficient to resolve this factual issue, and without sufficient information on the Baan companies, it could not fully respond to Baan's jurisdictional arguments.

Contrary to Dexter's arguments, the record reveals that Baan repeatedly stated to both Dexter and the trial court that "Baan USA has been, and remains, ready and willing to respond to reasonable discovery regarding 'Baan Company, Inc.' and any other discovery related to the threshold issues of jurisdiction and ripeness." Appellant's App. p. 205. Indeed, Baan "proposed to provide such discovery, allow Dexter to supplement its response on the jurisdiction/forum-selection clause issue, and to then obtain a mutually agreeable hearing date so that all the issues of the motion to dismiss could be presented to the Court at a single hearing," but Dexter declined. *Id.* Furthermore, the trial court afforded Dexter fourteen days in which to respond to Baan's interrogatory responses and to request a hearing if necessary, which Dexter seemingly did not do.

It is apparent to us that Baan responded to Dexter's two discovery requests that related to the jurisdictional issues and offered to respond to further discovery relating to the threshold matters, and Dexter simply chose not to serve any further discovery. Moreover, Dexter never filed any motions to compel and failed to take advantage of the fourteen-day period to respond to Baan's interrogatory responses and to request a hearing. Dexter's hands were not tied—there was no stay or protective order in place, only Baan's request for one. Under these circumstances, Dexter cannot now complain that it was denied an opportunity to conduct discovery on jurisdictional issues.

The judgment of the trial court is affirmed.

MATHIAS, J., concurs.

RILEY, J., concurs in result.