In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-2205

KANGOL LLC,

*Plaintiff-Appellee,*

*v.*

HANGZHOU CHUANYUE SILK IMPORT & EXPORT CO., LTD.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
24-cv-01636 — **Sharon Johnson Coleman**, *Judge.*

ARGUED FEBRUARY 25, 2026 — DECIDED MAY 29, 2026

Before KIRSCH, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Kangol LLC brought a trademark infringement and counterfeiting action against dozens of e-commerce vendors. According to Kangol, most of the defendants reside in China, including Hangzhou Chuanyue Silk Import & Export Co., Ltd. A recurring question in these types of lawsuits, often referred to as Schedule A cases, is whether the Convention on the Service Abroad of Judicial and

Extrajudicial Documents in Civil or Commercial Matters (the Hague Service Convention) permits plaintiffs to serve defendants in China by email. Believing that it does, the district court allowed Kangol to serve Hangzhou by email. After default judgment was entered, Hangzhou eventually appeared and moved to vacate the judgment for lack of proper service. The court denied Hangzhou's motion, reasoning that the Hague Service Convention permits service by email in China. We conclude the opposite; the Convention prohibits email service in China. However, the district court must decide whether the Convention applies at all. We therefore reverse and remand for further proceedings consistent with this opinion.

I

Kangol LLC is a clothing company known for hats depicting its kangaroo logo. In February 2024, Kangol sued 25 defendants, including Hangzhou Chuanyue Silk Import & Export Co., Ltd., for trademark infringement, counterfeiting, unfair competition, false designation of origin, and trademark dilution in violation of the Lanham Act. See 15 U.S.C. § 1114(1) (trademark infringement and counterfeiting); *id.* § 1125(a) (unfair competition and false designation of origin); *id.* § 1125(c) (trademark dilution). According to Kangol's complaint, the defendants are all e-commerce vendors selling products on platforms like Alibaba, and most of them are based in China. Suits of this nature are known as Schedule A cases, because—as here—the defendants are identified in a Schedule A document filed with the complaint. See *Eicher Motors Ltd. v. P'ships and Unincorporated Assn's Identified on Schedule "A"*, 794 F. Supp. 3d 543, 546 (N.D. Ill. 2025) (discussing Schedule A cases).

As is common in Schedule A cases, Kangol moved for a temporary restraining order and for permission to effect service by email. In support of the request for email service, Kangol represented that it was "very difficult" to ascertain the true identities and locations of the defendants "given that [they] are primarily Chinese entities that sell counterfeit goods on online sales platforms and typically do not disclose reliable information about their identities and locations in connection with their online storefronts[.]" The district court approved Kangol's request for service by email and entered a temporary restraining order.

Shortly thereafter, in April 2024, Kangol sent Hangzhou an email containing a link to the complaint, temporary restraining order, summons, and other documents. The same day, Hangzhou reached out to Kangol to begin settlement negotiations. And over the next several months, until February 2025, several attorneys representing Hangzhou attempted to negotiate with Kangol.

Despite this awareness of the lawsuit, Hangzhou never appeared before the district court. So, in May 2024, the court entered default judgment in favor of Kangol. The final judgment order directed third parties holding funds for the defaulting defendants to release those funds to Kangol as partial payment in fulfillment of the judgment. At some point between January and February 2025—the record doesn't identify precisely when—Kangol successfully collected a portion of the judgment from Hangzhou's Amazon account.

In February 2025, Hangzhou appeared and filed a motion to vacate the default judgment. Hangzhou's primary argument was that the judgment was void under Federal Rule of Civil Procedure 60(b)(4) because service by email in China

was prohibited by the Hague Service Convention, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, to which the United States and China are both parties. Hangzhou also argued that the default judgment itself violated the Hague Service Convention and that the district court's order violated Illinois procedure for post-judgment collection. The district court denied the motion to vacate, concluding that the Hague Service Convention permits service by email in China and rejecting Hangzhou's other arguments.

II

We start by addressing Kangol's waiver and timeliness arguments, neither of which we find compelling. Kangol argues, for the first time on appeal, that Hangzhou waived its service objection by waiting ten months after the entry of default judgment to raise the issue. Because Kangol didn't present this argument below, it is waived. See *Pable v. Chi. Transit Auth.*, 145 F.4th 712, 724–25 (7th Cir. 2025) (noting that a waiver argument can be waived). Though Hangzhou didn't argue waiver by Kangol in its reply brief, "the waiver doctrine is designed for our own protection as much as that of an opposing party, and therefore need not be asserted by a party for us to invoke it." *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (citation modified).

Even if we were to consider Kangol's argument, we would not find waiver by Hangzhou. A defendant waives an objection to improper service if he "gives a plaintiff a reasonable expectation that he will defend the suit on the merits or where he causes the court to go to some effort that would be wasted if personal jurisdiction is subsequently found lacking." *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016). We've declined to find such waiver when the parties

have only engaged in preliminary pretrial litigation activities, such as settlement discussions. See *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004). And that's all that happened during the ten-month period here; Hangzhou tried, and failed, to settle the matter with Kangol. See *id.* at 887–88 (rejecting the suggestion that a nine-month delay constitutes waiver). Moreover, Kangol doesn't identify any inconvenience it has suffered or any wasted action by the district court. See *id.* at 888.

Kangol also argues that Hangzhou's motion to vacate is untimely under Federal Rule of Civil Procedure 60(c)(1), relying on the Supreme Court's recent decision in *Coney Island Auto Parts Unlimited, Inc. v. Burton Trustee for Vista-Pro Automotive, LLC*, 607 U.S. 155 (2026). Rule 60(c)(1) requires motions under Rule 60(b) to be made within a reasonable time. *Coney Island* clarifies that this timeliness requirement applies to motions asserting that a judgment is void under Rule 60(b)(4). 607 U.S. at 157. As relevant here, the Court acknowledged that the reasonable-time requirement doesn't impose a fixed time limit. *Id.* at 160. And it indicated that, "in the context of a default judgment, it might be reasonable for a defendant not to seek relief before learning about a plaintiff's attempted enforcement." *Id.*

That's what happened here. After months of failed settlement negotiations, Kangol enforced the judgment by collecting partial payment from Hangzhou's Amazon account. Though the precise date of enforcement isn't clear, Hangzhou filed its motion to vacate the judgment no more than two months later. It thus appears that Hangzhou sought relief shortly after learning about Kangol's first attempted—and successful—enforcement of the default judgment. And

Kangol doesn't offer evidence rebutting this timeline of
events. We therefore conclude that Hangzhou's motion to va-
cate was timely under Rule 60(c)(1).

### III

Because we reject Kangol's waiver and timeliness argu-
ments, we proceed to the merits. Hangzhou challenges the
district court's denial of its motion to vacate on multiple
grounds. First, it argues that the default judgment order is in-
consistent with Illinois's procedure for post-judgment collec-
tion and therefore violates Federal Rule of Civil Procedure
69(a)(1). Second, Hangzhou argues that the default judgment
is void under Rule 60(b)(4) for lack of personal jurisdiction,
because service violated the Hague Service Convention. And
Hangzhou also contends that entry of the default judgment
violated Article 15 of the Convention.

We address these arguments in turn, reviewing the district
court's denial of the motion to vacate for an abuse of discre-
tion. *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 854 (7th
Cir. 2011). However, when a defendant asserts that a judg-
ment is void for lack of jurisdiction under Rule 60(b)(4), our
standard of review is "less deferential," because "no court has
the discretion to refuse to vacate [a] judgment once it recog-
nizes its lack of jurisdiction." *Id.* at 854–55. We review the dis-
trict court's legal determination regarding the existence of
personal jurisdiction de novo and its related factual findings
for clear error. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d
905, 911 (7th Cir. 2015).

### A

We start with, and reject, Hangzhou's challenge to the de-
fault judgment order based on Rule 69(a)(1). That Rule

provides that the procedure to enforce a money judgment "must accord with the procedure of the state where the court is located" unless a federal statute applies. Fed. R. Civ. P. 69(a)(1). As relevant here, the district court's default judgment order directed third parties to release funds to Kangol in partial payment of the judgment amount.

Hangzhou contends that this aspect of the default judgment order violates Rule 69(a)(1) because it's inconsistent with Illinois's post-judgment procedure, and that therefore the default judgment should be vacated or modified. But Hangzhou raised this argument in a cursory manner before the district court, without explaining how Illinois law applied. So the district court treated it as waived, rejecting Hangzhou's attempt to remedy that defect in its reply brief. Reviewing that decision for an abuse of discretion, we find no error. See *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (finding "perfunctory and undeveloped" arguments waived); *Darif v. Holder*, 739 F.3d 329, 336–37 (7th Cir. 2014) (finding arguments raised for the first time in a reply brief waived).

Even if we consider the merits of this argument, Hangzhou fails to show a violation of Rule 69(a)(1). Hangzhou points on appeal to two Illinois authorities identifying ways to discover assets to fulfill a judgment. See 735 Ill. Comp. Stat. 5/2-1402; Ill. Sup. Ct. R. 277. But neither bars the action taken by the district court, nor does Hangzhou purport to identify such language. Rule 69(a)(1) therefore doesn't provide a reason to vacate or modify the default judgment order.

B

We now address Hangzhou's other argument, which is that the default judgment is void for lack of jurisdiction

because service wasn't proper. As in many Schedule A cases, Hangzhou was served by email pursuant to Federal Rule of Civil Procedure 4(f)(3). See *Peanuts Worldwide LLC v. P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 330–31 (N.D. Ill. 2024) (discussing email service in Schedule A litigation). Rule 4(f)(3) authorizes service on a foreign entity by means "not prohibited by international agreement[.]" Hangzhou contends that because the Hague Service Convention prohibits service by email in China, service was improper under Rule 4(f)(3). Kangol responds that the Convention doesn't apply here, and that even if it does, it doesn't bar email service. We address separately the questions of whether the Convention applies and whether it prohibits email service in China.

1

We begin our analysis with the threshold question of whether the Convention applies. Article 1 states that the Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad" but "shall not apply where the address of the person to be served with the document is not known." 20 U.S.T. at 362.

Kangol argues that this case falls outside the Convention's scope because sending an email with links to a website (which contains documents) isn't transmittal of a "document" within the meaning of Article 1. But Kangol waived this argument by failing to raise it before the district court. See *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002). And even if it hadn't done so, we reject this argument as hardly credible. Kangol acknowledges that it sent an email to an entity located in China and that the email contained a link to copies of the

complaint, temporary restraining order, summons, and other relevant documents. This constitutes service of process, i.e., the "formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). The fact that those documents were sent through an emailed link makes no difference.

Kangol's other, more legitimate contention is that the Convention doesn't apply because Hangzhou's address wasn't known, as required by Article 1. District courts handling Schedule A cases typically require plaintiffs to make "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address" before deeming the defendant's address unknown. *NBA Props., Inc. v. P'ships and Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021); cf. Fed. R. Civ. P. 4(f)(1) (applying a reasonableness standard for service abroad pursuant to internationally agreed means). Kangol asserts that its efforts to locate Hangzhou yielded several, conflicting addresses, and that those addresses were for "stalls at an open-air market." Hangzhou, on the other hand, maintains that its address is known and easily discoverable.

The district court didn't resolve whether Kangol's efforts to determine Hangzhou's address were reasonably diligent, such that Hangzhou's address wasn't known. Instead, the court concluded that it didn't need to resolve whether the Hague Service Convention applied, because even if it did apply, the Convention permits email service in China. Turning to that question next, we find that the district court erred; the Convention does not permit service by email in China.

Therefore, the district court must resolve whether the Convention applies on remand.

2

We review the district court's interpretation of the Hague Service Convention de novo. *Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 362 (7th Cir. 2022). The district court concluded that the Convention permits email service in China, relying on two analytical steps. The court found that the Convention doesn't expressly authorize service by email. However, it also found that the Convention doesn't prohibit unenumerated methods of service. The court therefore reasoned that the Convention permits service by email on defendants in China. We conclude otherwise. The Convention's text and structure demonstrate that, where it applies, it provides the permissible means of service and excludes all others. And because no provision of the Convention authorizes service by email in China, such service violates the Convention and Rule 4(f)(3).

i

We begin our analysis with the Convention's text. See *Schlunk*, 486 U.S. at 699 (treaty interpretation "begin[s] with the text of the treaty and the context in which the written words are used"). Article 1 states that the Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. at 362. According to the Supreme Court, this "mandatory language" provides a "model exclusivity provision," indicating that the Convention describes all permissible service methods and "exclude[s] all other existing

practices." *Société Nationale Industrielle Aérospatiale v. U.S. D. Ct. for the S.D. of Iowa*, 482 U.S. 522, 534 & n.15 (1987).

Indeed, starting with *Société Nationale*, the Supreme Court has consistently understood the Hague Service Convention to be exclusive. In *Schlunk*, 486 U.S. 694, the Court stated that compliance with the Convention "is mandatory in all cases to which it applies" and that it "provide[s] the exclusive means of valid service." *Id.* at 705–06. And most recently, in *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017), the Court reaffirmed that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* at 273 (quoting *Schlunk*, 486 U.S. at 699). Thus, the Convention's language and the Supreme Court's understanding of that language make clear that—where the Convention applies—it sets out the permitted methods of service and excludes all others.

This reading is also consistent with the Convention's structure and the remainder of its text. *Schlunk*, 486 U.S. at 699–700 (noting that treaty interpretation considers "the context in which the written words are used" and general rules of construction). Articles 2 through 10 explain how service may be made. Article 11 adds that parties to the Convention may agree to permit service by means "other than those provided for in the preceding Articles." 20 U.S.T. at 364. And Article 19 clarifies that the Convention doesn't affect methods of service that a state has authorized under domestic law, even if they aren't "provided for" in the Convention. *Id.* at 365; see also *Water Splash*, 581 U.S. at 275 (discussing Articles 11 and 19).

If the Convention didn't purport to exclusively control service, Articles 11 and 19 would be superfluous; there'd be

no need to specify that service methods unmentioned in the Convention, but separately authorized by parties, are still permitted. This provides further evidence that the Convention enumerates the available means of service and prohibits all others. See *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (deeming it a "cardinal principle of statutory construction" to avoid interpretations that render a clause "superfluous, void, or insignificant"). Nor are we alone in adopting this interpretation; the other circuits to address this question have found that the Convention "creates a closed universe" of service methods. See *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 171 (2d Cir. 2025) ("Reading into the Convention's silence implicit permission for all types of service not affirmatively barred would render meaningless its approved methods of service, encouraging end-runs around the very system it created.") (citation modified); *SEC v. Lahr*, No. 22-2497, 2024 WL 3518309, at *3 & n.12 (3d Cir. July 24, 2024).

The text is clear, so we need not look beyond it. Even when we do, the extratextual sources "especially helpful" in ascertaining a treaty's meaning—drafting history, the views of the Executive, and the views of other signatories—all indicate that the Convention is exclusive. *Water Splash*, 581 U.S. at 280. The Convention's drafters considered the exclusivity issue and ultimately decided "to require … litigants to employ the Convention machinery[.]" 1 Bruno A. Ristau, International Judicial Assistance § 4-1-5, at 161 (2000) (quoting the explanatory report on the first draft of the Convention). And recent publications indicate that the executive branch understands the Convention to be exclusive, as do other parties. See U.S. Dep't of Just. Off. of Int'l Jud. Assistance, https://perma.cc/JS5C-9U9R (last updated Dec. 16, 2025) ("If

the Convention applies, parties cannot agree or stipulate to a method of service that the Convention neither authorizes nor permits[.]"); Hague Conf. on Priv. Int'l Law, Conclusions and Recommendations 7 (2024), https://perma.cc/J96K-94HX (confirming that the member parties to the Special Commission view the Convention as "exclusive").

ii

Because the Convention bars unspecified means of service, the question is whether any provision authorizes email service in China. As the district court acknowledged, no portion of the Convention explicitly authorizes service by email. However, Article 10(a) permits service "by postal channels, directly to persons abroad" as long as the destination state doesn't object. 20 U.S.T. at 363. District courts—and the parties before us—disagree on whether email is a postal channel and thus whether Article 10(a) provides for email service. Compare *Luxottica Grp. S.p.A. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) (finding that 10(a) objections cover service by email), with *NBA Props.*, 549 F. Supp. 3d at 798 (finding that 10(a) objections don't cover service by email).

However, we need not and do not resolve whether Article 10(a) permits email service, because it's undisputed that China has objected to service under Article 10(a). See Hague Conf. on Priv. Int'l Law, Declaration/Reservation/Notification, https://perma.cc/L4DS-C28E (last visited Apr. 8, 2026) (noting China's objection to service by the methods provided in Article 10). So even if Article 10(a) otherwise permits service by email as a type of postal channel, Article 10(a) doesn't apply here. And Kangol doesn't assert that any other portion of the Convention authorizes email service. We therefore

conclude that the Hague Service Convention prohibits service by email in China.

To sum up: if the Hague Service Convention applies, then service was improper because the Convention prohibits service by email in China. But the district court must first determine whether the Convention applies at all. We therefore reverse the district court's denial of Hangzhou's motion to vacate and remand with instructions for that court to consider whether the Convention applies.

We do not address Hangzhou's objection that Article 15 prohibited the entry of default judgment, because that argument is premature. Article 15 only applies when service is made "under the provisions of the present Convention," i.e., when the Convention itself applies. 20 U.S.T. at 364. Similarly, we do not address Hangzhou's argument that it may recover money transferred to Kangol in fulfillment of the judgment, because whether the judgment is void is yet to be determined.

REVERSED AND REMANDED