In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3182

NATIVE AMERICAN ARTS, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

THE WALDRON CORPORATION,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 2370—**Samuel Der-Yeghiayan**, *Judge*.

———————

ARGUED JANUARY 18, 2005—DECIDED MARCH 2, 2005

———————

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The Indian Arts and Crafts Act, 25 U.S.C. §§ 305 *et seq.*, forbids (so far as bears on this case) selling a good "in a manner that falsely suggests it is . . . an Indian product." § 305e(a). The principal plaintiff, Native American Arts (NAA), is a seller of goods produced by Indians. It brought this suit for damages against a non-Indian manufacturer of Indian-style jewelry that is advertised under such names as "Navajo," "Crow," "Southwest Tribes," and "Zuni Bear" and sold with tags that give facts about the tribe. The ads identify the

designer of the jewelry as Trisha Waldron, who is not an Indian. Neither the tags nor the ads contain any disclaimer of authenticity. The case was tried to a jury, the verdict was for the defendants, and the plaintiffs appeal.

Although the Indian Arts and Crafts Act dates back to 1935, this is—amazingly—the first reported appellate case under it. Until 1990, the only sanction for violating the false-advertising provision was criminal; and there were no prosecutions—zero. H.R. Rep. No. 400(II), 101st Cong., 2d Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 6391, 6392; Jon Keith Parsley, Comment: "Regulation of Counterfeit Indian Arts and Crafts: An Analysis of the Indian Arts and Crafts Act of 1990," 18 *American Indian L. Rev.* 487, 492-93 (1993); see also Indian Arts and Crafts Board, "Protection for Products of Indian Art and Craftsmanship," 61 F.R. 54551, 54551-52 (Oct. 21, 1996). In 1990, Congress authorized government and private civil suits. 25 U.S.C. § 305e(c); H.R. Rep. No. 400 (II), *supra,* 1990 U.S.C.C.A.N. at 6395-96, in which hefty damages can be awarded. 25 U.S.C. §§ 305e(a)(2), (b); William J. Hapiuk, Jr., Note: "Of Kitsch and Kachinas: A Critical Analysis of the Indian Arts and Crafts Act of 1990," 53 *Stan. L. Rev.* 1009, 1025 (2001). There have been some suits under the amended statute, but none until this one that got beyond the district court level.

The plaintiffs' principal argument is that the district judge should not have held unconstitutional, and there-fore refused to base an instruction to the jury on, a reg-ulation that provides that "the unqualified use of the term 'Indian' or . . . of the name of an Indian tribe . . . in connection with an art or craft product is interpreted to mean . . . that the art or craft product is an Indian product." 25 C.F.R. § 309.24(a)(2). The plaintiffs say that because two district judges to whom the case had previously been

assigned held the regulation constitutional, Judge Der-Yeghiayan was bound by the doctrine of the law of the case to hold likewise and his refusal to do so was a reversible error. We agree that he should have adhered to his predecessors' ruling, because the ruling was correct and in any event there was no reason to reexamine it. But his failure to do so does not bind us. The doctrine of law of the case limits reconsideration of rulings by the same or a lower court; it does not limit reconsideration by a higher court of rulings of a lower court. *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001); *Williams v. Commissioner*, 1 F.3d 502, 503-04 (7th Cir. 1993); *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990).

The plaintiffs do not put all their eggs in a basket with no bottom; they also challenge the soundness of Judge Der-Yeghiayan's ruling that the "unqualified use" regulation infringes freedom of speech and is also unconstitutionally vague and overbroad. He indeed was wrong. If he were right, trademark law would be unconstitutional. In effect the regulation makes "Indian" the trademark denoting products made by Indians, just as "Roquefort" denotes a cheese manufactured from sheep's milk cured in limestone caves in the Roquefort region of France. 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:91, p. 19 (4th ed. 2004 supp.). A non-Indian maker of jewelry designed to look like jewelry made by Indians is free to advertise the similarity but if he uses the word "Indian" he must qualify the usage so that consumers aren't confused and think they're buying not only the kind of jewelry that Indians make, but jewelry that Indians in fact made. There is no constitutional infirmity. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 531-41 (1987); *TE-TA-MA Truth Foundation— Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 667 (7th Cir. 2002); *Coca-Cola*

*Co. v. Purdy*, 382 F.3d 774, 787-88 (8th Cir. 2004); *Taubman Co. v. Webfeats*, 319 F.3d 770, 774-75 (6th Cir. 2003). But this conclusion does less for the plaintiffs than they hoped.

The regulation is the work of a small office in the Department of Interior called the Indian Arts and Crafts Board, 25 U.S.C. § 305, and a more substantial question than the constitutional questions that bedazzled the district judge is whether a regulation that "interpret[s]" "the unqualified use of the term 'Indian' . . . or the unqualified use of the name of an Indian tribe" to denote "an Indian product" is authorized by the Indian Arts and Crafts Act, which so far as relates to this issue merely authorizes the Department of the Interior to define the term "Indian product." § 305e(d)(2). That is not an authorization to determine what representations convey the impression that a work is such a product. There is no indication that Congress delegated to the Department authority to determine what constitutes sufficient proof of false advertising. *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 649-50 (1990); *Commodity Futures Trading Commission v. Zelener,* 373 F.3d 861, 867 (7th Cir. 2004); *Murphy Exploration & Production Co. v. U.S. Dept. of Interior*, 252 F.3d 473, 478-80 (D.C. Cir. 2001); *Nagahi v. INS*, 219 F.3d 1166, 1169-71 (10th Cir. 2000). The meaning of "Indian product" is plausibly within the scope of knowledge of an Indian Arts and Crafts Board—but not the requisites for proving consumer confusion, especially when it is not Indians, but non-Indians, who are the principal consumers of faux Indian products, and especially since the Board's enforcement role is extremely limited. The Board cannot conduct or initiate remedial proceedings; all it can do is refer complaints to the FBI for investigation, and to the Department of Justice for prosecution or civil action. 25 U.S.C. § 305d.

Well, it can do a little more; it can indicate the circumstances in which it will make such a reference. The analogy is to the merger guidelines issued by the Department of Justice, which describe the circumstances in which the Department will challenge a merger as a violation of federal antitrust law. The guidelines are statements of enforcement policy. The Board is certainly free to announce the policy that will guide it in deciding whether to refer matters to the Department of Justice for possible action. The "qualified use" regulation should be understood in this light rather than as an attempt to tell the courts how to decide whether consumers are likely to be confused.

But suppose we are wrong and the regulation governs suits to enforce the Indian Arts and Crafts Act; the next question would be the meaning of "unqualified use" and the bearing of that meaning on jury instructions, the closing arguments, and the jury's verdict. Perhaps the most natural meaning of "unqualified use of the term 'Indian'" or of the name of an Indian tribe is using the word or the name to denote an Indian product without including a disclaimer, such as "Indian style," or, more emphatically, if rather off-putting, "not manufactured by Indians." A common dictionary definition of "unqualified" is "not modified by reservations or restrictions." The *OED* gives a colorful example: "His ardour did not precipitate him into any unqualified declaration of his passion." The defendant did not include a disclaimer, so if "unqualified use" means what we have just suggested and governs the meaning of "falsely suggests," the plaintiffs were entitled to summary judgment on liability. They did not move for summary judgment, however, and at argument their lawyer told us that while a disclaimer would be the best method of qualifying the use of the term Indian or the name of a tribe, it is not the only

one that would satisfy the regulation; other contextual references could do so as well.

If this is right—and his concession makes it right for this case—then it is unclear how the regulation should be worked into jury instructions. The plaintiffs think that every statutory provision or regulation applicable to a case should have its own instruction, and in the language of the statute or regulation, to boot. That might be the correct approach if only lawyers and judges were eligible to be jurors. In instructing laypersons on the law, the judge should extract from the relevant legal sources the essential rules or principles that the jury is to apply to the facts and should state those rules and principles in simple, everyday, nonlegalistic language.

The instruction that the plaintiffs proposed, faithful to the regulation but opaque to a layperson, would have required the jury to return a verdict for them if it found either that the defendant had failed to qualify its use of the names of Indian tribes in its ads and labels or that it had otherwise falsely suggested that its products were Indian products. We expect that the jury would have been confused by such a regulation, especially when it was explained to them that the required qualification of the use of the name could consist of any pertinent contextual elements, such as the picture of Trisha Waldron that appears in some of the advertising or the type of store in which her jewelry is sold. The instruction might have said that the name of a tribe suggests an Indian product unless the context rebuts the suggestion. But the difference between this formula and the statutory "falsely suggests," which were it not for the regulation would allow a jury to award a verdict to a defendant even if the name of the tribe was not qualified, is probably too fine to sway a jury.

In any event the regulation (always assuming, contrary to our earlier ruling, that the regulation governs in litigation) would be pertinent only in a case in which there was no context: a case for example in which Waldron sold an unadvertised product labeled simply "Navajo Bracelet," with no mention of the manufacturer or even identification of the outlets in which the bracelet was sold—with nothing but the name and the price. There was plenty of context in this case. The question the jury had to answer was not what the names of the various items of jewelry meant but what the entire sales package, including advertising, labeling, and place of sale, suggested to the average consumer. In such a case, asking whether the defendant falsely suggested that it was selling Indian products, and asking whether it failed to qualify its use of the names of Indian tribes, come to the same thing. See *Sullivan v. CBS Corp.*, 385 F.3d 772, 776-79 (7th Cir. 2004); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001); *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 473 (3d Cir. 1994); *Restatement (Third) of Unfair Competition* § 21 (1995).

So there was no error in the instructions. The other arguments made by the plaintiffs either are rendered academic by our ruling on the adequacy of the instructions or lack sufficient merit to warrant discussion.

The judgment for the defendant is

AFFIRMED.

A true Copy:

      Teste:

                            _____
                             *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*