In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 04-3861 & 04-3862

NATIVE AMERICAN ARTS, INC., as assignee of
Stravina Operating Company, LLC,

*Plaintiff-Appellant,*

*v.*

HARTFORD CASUALTY INSURANCE COMPANY &
HARTFORD INSURANCE COMPANY OF THE MIDWEST,

*Defendants-Appellees.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 03 C 7233 & 03 C 7234—**Charles P. Kocoras**, *Chief Judge.*

---

ARGUED MAY 4, 2005—DECIDED JANUARY 25, 2006

---

Before RIPPLE, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This case dates back to 2001, when Native American Arts, Inc. (NAA), sued two divisions of Stravina Operating Company, LLC. Stravina asked its insurers to defend it against NAA's complaints, but they refused. Eventually, NAA and Stravina settled, and as part of that settlement, Stravina assigned its rights under its old insurance policies to NAA. Relying on those assignments, NAA initiated the present litigation against Stravina's primary insurers, Hartford Casualty Insur-

ance Company and Hartford Insurance Company of the Midwest (collectively referred to as Hartford), and Stravina's excess insurer, Great American Insurance Company, claiming that they had breached a duty to defend Stravina from NAA's original lawsuits. After reviewing the applicable policies, the district court found that the insurers had no such duty to defend Stravina. NAA appealed, and we affirm.

**I**

In the summer of 2001, NAA filed separate complaints against Bloom Brothers and Artistic Impressions, two divisions of Stravina. The complaints alleged that from at least the late 1990s, Stravina manufactured and sold inauthentic Native American crafts and jewelry. NAA charged that Stravina was deceiving the public and harming manufacturers of authentic Native American goods by suggesting that its products too were authentic. If this proved to be true, the complaints asserted, the defendants' actions would violate the Indian Arts and Crafts Act, 25 U.S.C. § 305, *et seq.*, which forbids selling merchandise "in a manner that falsely suggests it is . . . an Indian product." § 305e(a). As we noted recently in another case brought by NAA, *Native American Arts, Inc. v. The Waldron Corp.*, although the Indian Arts and Crafts Act dates back to 1935, until 1990 the Act's only sanction was criminal. 399 F.3d 871, 873 (7th Cir. 2005). And that remedy has been purely theoretical: in its seventy years of existence, no charges have ever been filed under the criminal provision of the Act. *Id.* In 1990, Congress added teeth to the legislation, creating a private cause of action that enabled injured plaintiffs—sellers of authentic Indian arts and crafts—to recover substantial damage awards from violators of the Act. *Id.*; see 25 U.S.C. § 305e(a)(2), (b), (c).

Upon receiving NAA's first complaint in April 2001, Stravina asked Hartford to defend it. After reviewing the complaint, however, Hartford denied coverage, informing Stravina that the policy did not obligate it to defend claims based on the Indian Arts and Crafts Act. Stravina alerted Hartford to the second NAA complaint two years later, and once again, Hartford informed Stravina that it had concluded that Stravina's insurance coverage did not extend to this type of allegation.

In August 2003, with Stravina's insurers on the sidelines, NAA and Stravina settled both lawsuits. Stravina paid NAA $150,000 and agreed on a "settlement value" for NAA of $3 million, which NAA could seek through an assignment of Stravina's rights under its old insurance policies. (In each settlement agreement, the parties allocated $1 million to each of the three policy years covered by Hartford and Great American; because the insurance companies had declined to participate in the process, they had no say over this agreed amount.) Soon thereafter, NAA filed two complaints in the Northern District of Illinois against the defendants, alleging that Stravina's insurance coverage included a duty to defend against NAA's original lawsuits, and at this point also a duty to indemnify. After the complaints were consolidated, the district court granted the defendants' motion for summary judgment. The court agreed with Hartford's original assessment, finding that the policies did not include a duty to defend complaints alleging violations of the Indian Arts and Crafts Act. The district court's decision included Stravina's excess insurer, Great American Insurance Company, but Great American was dismissed from this appeal after it reached a settlement with NAA.

## II

Because this case is based on diversity jurisdiction, we look to state law to determine the scope of Stravina's insurance coverage. See *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997). While NAA and the defendants disagree about which state's law applies— NAA says Illinois, the defendants, California—we need not engage this debate. Although California and Illinois law differ on the consequences of an insurer's breach of its duty to defend (in particular, the consequences for the duty to indemnify after a duty to defend has been established), both states take essentially the same approach to determining whether an insurer has a duty to defend in the first place. Compare *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993) with *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1160 (Cal. 1993). At this stage of the litigation, therefore, Illinois would apply its own law, and the federal court must follow suit. See, *e.g.*, *Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 719 N.E.2d 1092, 1096 (Ill. App. Ct. 1999); see also *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) ("Where there is no disagreement among the contact states, the law of the forum state applies.").

In Illinois, to determine whether an insurer has a duty to defend its insured, "the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Crum & Forster*, 620 N.E.2d at 1079. If the facts alleged in the underlying complaint fall within, or even potentially within, the coverage provisions of the policy, the insurer must defend the insured. *Id.* In assessing whether the duty exists, a court must construe the allegations in the underlying complaint liberally and any doubt in coverage must be resolved in favor of the insured. See *Ill. State Med. Ins. Servs., Inc. v. Cichon*, 629 N.E.2d 822, 826 (Ill. App. Ct. 1994). Nonetheless, deference only goes so far; if the policy

terms are unambiguous, the court must apply their plain and ordinary meaning. *Crum & Forster*, 620 N.E.2d at 1078.

NAA argues that Hartford's duty to defend arose because the complaints alleged an "advertising injury." Stravina's policy read: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages." Save for a few irrelevant changes, Stravina's policy during the period of coverage at issue here defined "advertising injury" as:

a. Oral or written publication of material in your "advertisement" that slanders or libels a person or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material in your "advertisement" that violates a person's right of privacy;

c. Copying, in your "advertisement," a person's or organization's "advertising idea" or style of "advertisement"; or

d. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement."

The policy defined "advertisement" as "a dissemination of information or images that has the purpose of inducing the sale of goods, products or services through: (1) Radio; (2) Television; (3) Billboard; (4) Magazine; (5) Newspaper; or [(6)] Any other publication that is given widespread public distribution." While this definition is broad, the policy contained an exception: an advertisement "does not include the design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products."

Hartford argues that this exception to the definition applies here. In its view, Stravina's products were merely labeled misleadingly and since, under the policy, labels do not constitute advertisements, there can be no advertising injuries. If NAA's original complaints were this narrow, Hartford's argument might be persuasive. NAA's complaints, however, alleged not only that Stravina mislabeled its products, but also that Stravina violated the Indian Arts and Crafts Act by suggesting its products were authentic "in advertising activity[,] including the distribution of catalogues and brochures as well as other advertising and marketing methods." Given the breadth of NAA's complaints, we find that at least some of NAA's allegations concerned advertisements.

We find as well that the complaints adequately alleged that Stravina's advertisements were injurious. Stravina's policies included as part of the definition of such an injury the copying of another "organization's 'advertising idea'," which the policy defined circularly as "any idea for an advertisement," or the copying of another's "style of advertisement." NAA's complaints mirrored this language, alleging that Stravina effectuated many of its violations of the Indian Arts and Crafts Act by "misappropriat[ing . . . NAA's] advertising ideas and style of doing business." NAA's advertisements stressed the authenticity of its goods; by falsely doing the same, Stravina's advertisements traded upon a reputation, history, and sales advantage that it did not deserve. Allegedly, by appropriating NAA's advertising strategy, Stravina took sales away from those whose heritage gives them the right to capitalize on the market value and goodwill associated with authentic, Native American-made products. While the Indian Arts and Crafts Act does not require that misrepresentation occur through the use of advertisements, the fact that NAA's complaints alleged that Stravina took advantage of NAA's

"advertising style" to effectuate its alleged violation of the Act should have put Hartford on notice that at least some of Stravina's actions may have caused an "advertising injury." *Cf. American Simmental Ass'n. v. Coregis Ins. Co.*, 282 F.3d 582 (8th Cir. 2002) (finding that the use of the term "fullblood" to misrepresent the quality of cattle constituted an "advertising injury"). Moreover, an insurer's duty to defend arises so long as the complaint potentially falls within the policy's coverage, even if coverage is debatable. See *Crum & Forster,* 620 N.E.2d at 1079.

But our inquiry cannot end there. From 1999 to 2001, Stravina's policy excluded coverage for an "'advertising injury' arising out of [the] infringement of [a] trademark, trade name, service mark or other designation of origin or authenticity." Similarly, from 2001 to 2003, the policy excluded any advertising injuries "[a]rising out of any violation of any intellectual property rights, such as patent, trade secret, trademark, trade name, service mark or other designation of origin or authenticity." This language is unambiguous, and it is enough to remove NAA's complaints from the purview of Hartford's duty to defend. The purpose of the Indian Arts and Crafts Act is to protect consumers and the makers of authentic Native American goods from false representations of a product's "origin or authenticity." See 68 Fed. Reg. 35164 (describing the Indian Arts and Crafts Act as "essentially a truth-in-marketing law designed to prevent, through both civil and criminal sanctions, marketing of products in a manner that falsely suggests such products are produced by Indians when the products are not, in fact, made by an Indian as defined by the 1990 Act.").

NAA argues against this result by asserting that the advertising injury exclusion in the policies was meant only to apply to advertising injuries caused by trademark violations. Taking that thought one step further, NAA argues that so long as it did not file suit under the Lanham

Act, 15 U.S.C. § 1051 *et seq.*, the complaints cannot fall under the "origin or authenticity" exclusion. We find this reading untenable. While it is true that the exclusion includes trademark violations, it would do serious violence to the language to say that it is limited to trademark, or Lanham Act, violations. Instead, after specifically mentioning trademarks, the exclusion goes on to state broadly that Hartford's duty to defend will not extend to any dispute concerning the "designation of origin or authenticity" of one of Stravina's products. This is exactly what NAA alleged in the 2001 complaints.

Even if we thought that the exclusion were tied more closely to traditional forms of intellectual property, such as trademarks, NAA cannot prevail. In *Waldron*, we wrote that as a functional matter, the Indian Arts and Crafts Act and its implementing regulation, see 25 C.F.R. § 309.24(a)(2), "makes 'Indian' the trademark denoting products made by Indians, just as 'Roquefort' denotes a cheese manufactured from sheep's milk cured in limestone caves in the Roquefort region of France." 399 F.3d at 873-74. Thus, even if the policies' exclusions applied only to trademark-like violations, they would apply here, because a violation of the Indian Arts and Crafts Act is just such a violation. Indeed, in *Waldron*, we looked to Lanham Act cases to guide our analysis. See 399 F.3d at 875-76.

NAA's final argument is that even if the "origin or authenticity" exclusion applies, there is an exception to that exclusion in Stravina's 2001-2002 policy for any infringement of a "title of any . . . artistic work." Although NAA's original amended complaints alleged an "*advertising injury* arising out of Defendants' infringement of title," the complaints contained no information that would have alerted the insurers to a possible independent infringement of title theory. An insurer has no duty to defend where it is "clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within,

or potentially within, the policy's coverage." *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991).

Even taking into account the fact that in federal court the pleading standard is adequate notice, rather than the adequacy of facts alleged, see FED. R. CIV. P. 8(a), the best NAA can offer is that Stravina "passed off their goods under the designation or descriptive heading of Indian-made." Such false descriptions do not constitute "infringements of title," and thus this allegation fails the notice test. In *Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1124 (7th Cir. 1994), we suggested that the infringement of titles "presumably" involves titles "of books, songs, products, services, and so forth." See also *Mez Indus., Inc. v. Pacific Nat'l. Ins. Co.*, 90 Cal. Rptr. 2d 721, 734 (Cal. Ct. App. 1999) (term "title" "apparently refers to a name, such as a name of a literary or artistic work, rather than to ownership of an invention or other thing," citing *Owens-Brockway Glass v. International Ins. Co.*, 884 F. Supp. 363, 368 (E.D. Cal. 1995)); *First State Ins. Co. v. Alpha Delta Phi Fraternity*, 1995 WL 901452 (Ill. App. Ct. Nov. 3, 1995) (unpublished) (defining term "title" as "the name by which anything is known," following Black's Law Dictionary 1485 (6th ed. 1990)). In other words, falsely describing *how* something is made or *who* made it is quite different than appropriating or misusing the "title" of another's artistic work. It is one thing to claim that your sparkling wine was created using the *méthode champenoise*; it is quite another to claim that your sparkling wine is Veuve Clicquot Ponsardin™. NAA's original complaints alleged that Stravina deceived customers through mislabeling and the like, but it provided nothing to indicate that it was trying to assert a claim of title infringement.

### III

While NAA's complaints adequately alleged that Stravina's advertisements were harmful, that harm allegedly occurred as a result of Stravina's false representations about the authenticity of its products. Since Stravina's insurance coverage did not extend to this type of claim, the district court was correct to grant Hartford's motion for summary judgment. We therefore AFFIRM the judgment of the district court.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*