The **ST. PAUL TRAVELERS COMPANIES, INC.,** formerly known as St. Paul Fire and Marine Insurance Company, Plaintiff,

v.

**CORN ISLAND SHIPYARD, INC., Defendant.**

**No. 3:04 CV 0154 DFH WGH.**

United States District Court, S.D. Indiana, Evansville Division.

March 31, 2006.

James W. Carbin, Duane Morris LLP, Newark, NJ, Raymond T. Seach, Riley Bennett & Egloff LLP, Anthony R. Jost, Riley Bennett & Egloff LLP, Indianapolis, IN, for Plaintiff.

Steven K. Hahn, Ziemer Stayman Weitzel & Shoulders, Patrick A. Shoulders, Ziemer Stayman Weitzel & Shoulders, Evansville, IN, for Corn Island Shipyard, Inc.

## ENTRY ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

The St. Paul Travelers Companies, Inc. ("St.Paul") filed suit in this court seeking a declaratory judgment that it does not have an obligation to pay expenses of a claim against its insured under the Longshore and Harbor Workers' Compensation Act (the "Longshore Act"), 33 U.S.C. § 901 *et seq.* The claim arose from an accident on the premises of defendant Corn Island Shipyard, Inc. on February 2, 2001. Rick Williams was a Corn Island employee and suffered extensive injuries from the accident. He was deemed permanently and totally disabled on May 23, 2002. Corn Island had purchased insurance to cover its liability under the Longshore Act from Fremont Industrial Indemnity Company.

Fremont paid more than $1 million on behalf of Mr. Williams. This case stems from the fact that Fremont was then declared insolvent in June 2003 and stopped paying on the Williams claim. The question here is whether an excess liability insurance policy, known here as a "bumbershoot" policy, that St. Paul sold to Corn Island provides coverage for Corn Island's substantial remaining obligations to Mr. Williams under the Longshore Act.

On September 11, 2003, the U.S. Department of Labor informed Corn Island that it would remain liable for the remainder of the Williams claim despite Fremont's insolvency. In February 2004, Corn Island first notified plaintiff St. Paul of the Williams claim and asserted a right to coverage under the St. Paul policy. On June 21, 2004, St. Paul denied the claim and filed this lawsuit seeking a declaratory judgment under 28 U.S.C. § 2201. This court has diversity jurisdiction under 28 U.S.C. § 1332.

Both parties have moved for summary judgment. St. Paul asserts that its excess liability policy with Corn Island does not cover the Williams claim. St. Paul also asserts that even if the policy did cover his claim, Corn Island's delay in notifying St. Paul of the accident bars coverage. Corn Island argues that the Williams claim is within the scope of the St. Paul's policy and that its delayed notice did not prejudice St. Paul and thus should not bar coverage. As explained below, even if the St. Paul policy covered the Williams claim, Corn Island's delay in notifying St. Paul bars coverage even without a showing of prejudice. That is the result under well established principles of New York law, which governs the issue. Accordingly, the court grants St. Paul's motion for summary judgment and denies Corn Island's motion for summary judgment.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505.

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed.R.Civ.P. 56(c); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

The fact that both sides have filed cross-motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and will deny both motions if there is a genuine issue of material fact. *E.g., Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *Harms v. Laboratory Corp. of America,* 155 F.Supp.2d 891, 905–06 (N.D.Ill.2001). A factual issue is material if resolving the issue may influence the outcome of the suit under governing law. *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992).

*Undisputed Facts*

Corn Island owns and operates a shipyard along the Ohio River in Southern Indiana. On February 2, 2001, Rick Williams' clothes caught fire while he was cleaning paint equipment using flammable thinner. Def. Ex. 2 at 181. The accident caused Mr. Williams to suffer burns to over 65 percent of his body. Pl.Ex. L at 6. After undergoing extensive treatment for his injuries, including a three month stay in a burn unit, Mr. Williams' physicians found that he had reached maximum medical improvement on or about May 22, 2002. *Id.* On May 23, 2002, the U.S. Department of Labor declared him to be permanently and totally disabled. Pl.Ex. P.

Fremont Industrial Indemnity Company was Corn Island's workers' compensation insurer and provided coverage for liabilities under, among other laws, the Longshore Act, 33 U.S.C. § 901 *et seq.* Pl.Ex. B. Mr. Williams made a claim under the Longshore Act, and Fremont paid $1,044,666.68 of his medical expenses and $52,236.33 in benefits to him by the time of its insolvency in the summer of 2003. Def. Ex. 1 ¶ 6. On July 2, 2003, the California Insurance Commissioner was appointed receiver of Fremont's assets. Pl.Ex. R at 3–4. To date, the California Insurance Commissioner has paid no additional amounts toward the Williams claim. Def. Ex. 1 ¶ 8. The parties agree that Mr. Williams is likely to be entitled to substantial payments in the future under the Longshore Act.

In August 2003, Corn Island's insurance broker filed a claim with the Indiana Insurance Guaranty Association, an entity established to address problems that arise when insurers default on their obligations to their insureds. Def. Ex. 1 ¶ 7. The Association agreed to take over payment of medical expenses and benefits to Mr. Williams in installments up to its statutory cap of $100,000. *Id.* On September 11, 2003, the U.S. Department of Labor notified Corn Island that it remained liable to Mr. Williams under the Longshore Act despite Fremont's insolvency. Pl.Ex. O; Def. Ex. 8.

Five months later, on February 16, 2004, Corn Island's insurance broker sent St. Paul a notice of claim via facsimile regarding Mr. Williams' injuries. Def. Ex. 9. St. Paul responded with a letter dated February 19, 2004 reserving its rights to dispute coverage. Pl.Ex. H; Def. Ex. 10. After an investigation, St. Paul denied the claim in a second letter dated June 21, 2004. Pl.Ex. C; Def. Ex. 11. In that letter St. Paul stated that its policy did not cover the Williams claim and that even if it did, the claim nonetheless was barred due to late notice. On that same day, St. Paul filed this suit seeking a declaration that it owes no obligation to cover the Williams claim. After discovery, both sides filed motions for summary judgment.

## Discussion

### I. *Choice of Law*

The threshold question is which law governs interpretation of the St. Paul policy. The policy provides that New York law governs.[1] Corn Island suggests that admiralty law applies and that under federal choice-of-law rules, the New York choice-of-law provision found in the St. Paul poli-cy should be held invalid. The court finds that admiralty jurisdiction does not apply to this suit. This court has diversity jurisdiction, and under applicable Indiana choice-of-law principles, the parties' choice of New York law should be enforced.

### A. *Admiralty Jurisdiction*

In *Simon v. Intercontinental Transport (ICT) B.V.*, 882 F.2d 1435, 1440–44 (9th Cir.1989), the Ninth Circuit reviewed in detail the scope of admiralty jurisdiction over insurance disputes connected to maritime activities. The court held in *Simon* that admiralty jurisdiction did not apply to a claim for bad faith breach of a contract for coverage under the Longshore Act. After reviewing the applicable case law and tests developed for addressing such issues, the court treated the issue as a contract dispute and explained:

> MTC's insurance against liability under the LHWCA does not differ significantly from insurance or other risk allocating systems in which numerous land-based employers participate to cover their liability under state worker's compensation statutes. Furthermore, MTC's insurance bears no relationship to any particular vessel. The insurance is only indirectly connected with maritime commerce because of the relationship between MTC's potential compensation liability and its performance of stevedoring contracts. Such a relationship is far too tenuous to justify classifying the insurance for compensation liability as a maritime obligation or interest sufficient to bring the policies and their related servicing agreements

---

1. The provision reads: "This Policy shall be governed by the internal laws of the State of New York in all respects, including matters of interpretation and performance, and none of the Policy terms may be waived, altered, modified, or amended except in writing duly signed by or on behalf of the Underwriters." Pl.Ex. A at 14.

within the pale of admiralty jurisdiction. 882 F.2d at 1442–43. Based on this reasoning, the court reversed the district court's denial of a motion to dismiss and ordered dismissal for lack of jurisdiction where diversity of citizenship was not present. Because the St. Paul policy in this case also applies to numerous land-based liabilities and is not tied to any particular vessel, this analysis applies here to the dispute over whether St. Paul's excess liability policy applies to the Williams claim under the Longshore Act.

B. *Diversity Jurisdiction*

 In this case, the parties have diverse citizenships. When a federal court has jurisdiction based on diverse citizenships under 28 U.S.C. § 1332, the choice-of-law principles of the forum state apply. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Native American Arts, Inc. v. Hartford Casualty Ins. Co.,* 435 F.3d 729, 731 (7th Cir.2006) (applying rule to insurance coverage dispute). Indiana law clearly favors contractual choice-of-law and choice-of-forum provisions and "presume[s] that contracts represent the freely bargained agreement of the parties." *Dexter Axle Co. v. Baan USA, Inc.,* 833 N.E.2d 43, 49 (Ind.App.2005); accord, *Allen v. Great American Reserve Ins. Co.,* 766 N.E.2d 1157, 1162 (Ind.2002). A showing of unequal bargaining power will not render a contract unenforceable. To reach such a result, "there must also be a showing that the contract is unconscionable." *Dexter Axle,* 833 N.E.2d at 49.

 Corn Island has not overcome the presumption that the choice-of-law provision in the St. Paul policy is valid and enforceable. The St. Paul policy was struck between two sophisticated business entities through an arms-length transaction. Corn Island was represented through an insurance broker who managed the company's policies and had experience in the industry. Nothing in the record reflects that the transaction was anything but arms-length, nor was the contract itself unconscionable. Indiana law would honor the New York choice-of-law provision contained in the policy.

II. *Late Notice*

St. Paul contends that its excess liability coverage does not apply at all to liabilities under the Longshore Act. There is evidence supporting that interpretation. Most basically, the excess coverage applied only to liabilities in excess of $500,000. The underlying Longshore Act coverage from Fremont was itself unlimited, so there was no need for excess coverage on such liabilities (apart from the risk that Fremont would default on its obligations). Other coverages by Fremont were capped at $500,000 per accident, so that the fit with the St. Paul policy was exact. Fremont in fact paid more than $1,000,000 on the Williams claim before it was declared insolvent. At the same time, the St. Paul policy includes some broad language suggesting that its excess coverage liability could apply to the Longshore Act liability.

The court need not resolve those debates, however, because the undisputed facts show that Corn Island's late notice to St. Paul defeats coverage under New York law, even absent a showing of prejudice resulting from the delay. Mr. Williams' accident occurred on February 2, 2001. Fremont ceased paying when it was declared insolvent in the summer of 2003. In September 2003, the U.S. Department of Labor sent Corn Island a letter putting the company on notice that it was still liable to pay the Williams claim despite Fremont's insolvency. But Corn Island did not notify St. Paul of the incident until February 16, 2004—about five months after receipt of the letter, almost eight

months after Fremont's insolvency, and nearly three years after the accident. Even if the earlier delays might have been excused under the policy and New York law, the six to seven month delay between knowledge of Fremont's insolvency and the first notice to St. Paul bars coverage.

The St. Paul policy included the following notice requirement:

> Whenever any Assured has information from which the Assured may reasonable [sic] conclude that an occurrence covered hereunder involves an event likely to involve this Policy, notice shall be sent to Underwriters as soon as practicable, provided, however, that the failure to notify Underwriters of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later time, would appear to give rise to claims hereunder, shall not prejudice such claims.

Pl.Ex. A at 8, ¶ III.

■ New York law on this subject is unusually strict, as New York's highest court explained last year:

> For years the rule in New York has been that where a contract of primary insurance requires notice "as soon as practicable" after an occurrence, the absence of timely notice of an occurrence is a failure to comply with a condition precedent which, as a matter of law, vitiates the contract (see *Security Mut. Ins. Co. of N.Y. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 440–443, 340 N.Y.S.2d 902 [1972]) [failure to notify in a timely manner allowed insurer to disclaim coverage]. No showing of prejudice is required (*id.*). Strict compliance with the contract protects the carrier against fraud or collusion (*id.*); gives the carrier an opportunity to investigate claims while evidence is fresh; allows the carrier to make an early estimate of potential exposure and establish adequate reserves and gives the carrier an

opportunity to exercise early control of claims, which aids settlement (*Unigard Sec. Ins. Co. v. North Riv. Ins. Co.*, 79 N.Y.2d 576, 582, 584 N.Y.S.2d 290, 594 N.E.2d 571 [1992]).

*Argo Corp. v. Greater New York Mutual Ins. Co.*, 4 N.Y.3d 332, 794 N.Y.S.2d 704, 827 N.E.2d 762, 764 (2005). The notice requirement applies specifically to notice to excess liability carriers. *Id.*, citing *American Home Assurance Co. v. International Ins. Co.*, 90 N.Y.2d 433, 661 N.Y.S.2d 584, 684 N.E.2d 14, 17–18 (1997). "Where a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded the carrier within a reasonable period of time." *Great Canal Realty Corp. v. Seneca Ins. Co.*, 5 N.Y.3d 742, 800 N.Y.S.2d 521, 833 N.E.2d 1196, 1197 (2005).

■ Giving Corn Island the benefit of the doubt, so long as Fremont was solvent and was paying the Williams claim and was not subject to any policy limit, Corn Island might reasonably have concluded that the Williams accident "did not appear to involve this Policy," *i.e.*, the St. Paul excess liability policy. That proviso in the St. Paul policy notice provision is consistent with New York law, which excuses late notice if the insured has a reasonable belief that the policy does not provide coverage. *Reynolds Metal Co. v. Aetna Casualty & Surety Co.*, 259 A.D.2d 195, 696 N.Y.S.2d 563, 567 (N.Y.App.1999). This reasoning could excuse the failure to notify St. Paul at the time of the Williams accident, or perhaps later when Williams was deemed permanently and totally disabled.

When Corn Island learned of Fremont's insolvency, however, it then had reason to believe that the St. Paul policy should provide coverage, at least under the reading of the St. Paul policy advocated by Corn Island in this lawsuit. Corn Island's insur-

ance broker filed a claim with the Indiana Insurance Guaranty Association in August 2003, and on September 11, 2003, the federal government advised Corn Island that it was responsible for the Williams claim regardless of the Fremont insolvency. Whether measured from August or September, it took Corn Island another five or six months to notify St. Paul that Corn Island believed the Williams accident was covered.

Under New York law, delays for one or two months are routinely held unreasonable. *American Ins. Co. v. Fairchild Industries, Inc.*, 56 F.3d 435, 440 (2d Cir. 1995); *American Home Assurance Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir.1993) (collecting New York cases); *Deso v. London & Lancashire Indemnity Co.*, 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889, 891 (1957) (holding delay of 51 days to be unreasonable). Under New York law, then, even if there might have been coverage under the St. Paul policy, the late notice defeats coverage.

■ To avoid this result, Corn Island offers several arguments. First, it contends that New York law bears no relationship to the contract and the parties' relationship. In this commercial transaction, however, between a large insurance company and a business advised by its expert insurance broker, the parties could reasonably choose to use New York law to govern their relationship. New York has an extensive body of insurance law that could provide a ready source of guidance in the event of a dispute. Cf. *Dexter Axle*, 833 N.E.2d at 49 (enforcing contractual choice of California as forum for litigation even though no parties or activities were in California; choice had rational basis because California courts have acquired significant expertise in negotiating disputes regarding complex technological issues).

■ Second, Corn Island argues that the Longshore Act itself absolves it of any requirement to provide notice to St. Paul because notice to the employer of the occurrence or injury shall be deemed notice to "the carrier." The Act provides in relevant part:

> In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this chapter may be most effectively discharged by the employer, and in order that the administration of this chapter in respect of such liability may be facilitated, the Secretary shall by regulation provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect to such liability, imposed by this chapter upon the employer, as it considers proper in order to effectuate the provisions of this chapter. For such purposes (1) *notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier,* (2) jurisdiction of the employer by a deputy commissioner, the Board, or the Secretary, or any court under this chapter shall be jurisdiction of the carrier, and (3) any requirement by a deputy commissioner, the Board, or the Secretary, or any court under any compensation order, finding, or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer.

33 U.S.C. § 935 (emphasis added). The statute governs mechanisms by which an employer may formally notify the U.S. Department of Labor that it has insurance to cover its liability under the Longshore Act. The undisputed facts here show that Corn Island never treated St. Paul as its carrier under the Act, but designated only Fremont as its carrier under the Act. Section 935 does not apply to an excess carrier and does not excuse an (arguably covered) employer from giving notice to such an excess insurer, at least where the employer itself

has not treated the insurer as its "carrier" under the Act.

Third, Corn Island suggests that applying New York law to the notice issue, as the parties had agreed, would be contrary to Indiana public policy. The public policy exception to otherwise applicable choice-of-law rules does not apply merely because Indiana law would change the outcome of the case. The exception may apply when another state's law appears to be "against good morals or natural justice, or prejudicial to the general interests of the citizens of this state." *Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 234 (Ind.App.1997), quoting *Wabash R. Co. v. Hassett*, 170 Ind. 370, 83 N.E. 705, 709 (1908), and following *Maroon v. State Dep't of Mental Health*, 411 N.E.2d 404, 410–12 (Ind.App.1980) (limiting exception to cases dealing with gaming contracts, lotteries, and marriages between close relatives). Public policy may overcome a choice-of-law provision if Indiana has clearly prohibited it, as it has under its franchise statute. *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990) (Indiana franchisee could not waive statutory rights through agreement to apply New York law). There is no comparable statutory bar in this case, and it is not contrary to the public policy of Indiana to enforce the choice of law reflected in a contract between two sophisticated businesses.

### Conclusion

For the reasons stated, St. Paul's motion for summary judgment is granted and Corn Island's motion for summary judgment is denied. A final declaratory judgment shall be entered in favor of St. Paul.

So ordered.