**INDIANAPOLIS–MARION COUNTY PUBLIC LIBRARY, Appellant–Defendant,**

v.

**SHOOK, LLC, Appellee–Plaintiff.**

No. 06A01–0411–CV–488.

Court of Appeals of Indiana.

Oct. 13, 2005.

Gregory F. Hahn, F. Scott Treadway, Robert S. Daniels, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellant.

Julia Blackwell Gelinas, Daniel P. King, Locke Reynolds, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

This interlocutory appeal stems from the saga regarding the renovation of the Indianapolis–Marion County Public Library (the Library). In this particular chapter, the appellant-defendant Library appeals the trial court's order denying its motion to dismiss the breach of contract action that was brought by the appellee-plaintiff Shook, LLC (Shook), a general contractor that the Library retained to build a garage for its facility. Specifically, the Library maintains that its motion should have been granted because Shook prematurely filed its breach of contract action against it in the trial court. In the alternative, the Library asserts that the trial court abused its discretion when it did not transfer this action to a county of preferred venue. Finding that the trial court properly denied the Library's motion to dismiss the action, and concluding that there was no abuse of discretion in refusing to transfer the case to another venue, we affirm.

## FACTS

On October 23, 2002, the Library awarded a construction contract to Shook for the purpose of building a parking garage adjoining the central library in downtown Indianapolis. Shook commenced work at the site in March 2003. The agreement between the parties consisted of the following documents: Standard Form of Agreement Between Owner and Contractor (Agreement), General Conditions of the Contract for Construction (General Conditions), and Modifications and Supplemental Conditions (Supplemental Conditions).

At issue here is Supplemental Condition J, which governed the resolution of claims and disputes between the parties. In relevant part, this condition provided:

If Contractor has a dispute with Owner regarding the application or interpretation of any provision of this Agreement or the breach thereof, the Contractor shall, within ten (10) days after such dispute arises, submit its claim, in writing, to Owner attaching all supporting documentation. Should Owner request additional documentation or information, Contractor shall provide such documentation and/or information promptly. Within thirty (30) days after receiving contractor's written claim and all requested documentation and information, Owner shall respond with its position and proposed resolution of the dispute.... As a condition precedent to initiating any court or arbitration proceeding as provided for in this Article, Contractor must first comply with the provisions set forth herein.

Appellee's App. p. 215. Also, once the thirty-day period described in the above condition expired, Shook was entitled to send a forum request letter triggering a ten-day period within which the Library could identify the proper forum for litigation or arbitration and venue where Shook could pursue its claims. This ten-day forum period is specifically established in Supplemental Condition J:

Contractor must make a written request to Owner to determine whether the dispute shall be submitted to a court or to arbitration. Owner shall respond to the contractor's request within ten (10) business days after receipt thereof. Owner's response shall identify whether the matter will be submitted to a court or to arbitration.

Appellee's App. p. 216. If the ten-day period expired with no response from the Library, Supplemental Condition J also expressly permitted Shook to "initiat[e] any court or arbitration proceeding as provided for in this Article." Appellee's App. p. 215. In addition to providing a payment schedule for the work that Shook had completed for the Library, the Agreement also entitled Shook to monetary compensation and time extensions for additional work that had to be performed.

Although it began as a relatively mundane short story, the relationship of the parties soon exploded into quite the novel with many a subplot. In particular, Shook asserted that it incurred additional costs as a result of a revised traffic control plan that had to be implemented. Shook also maintained that the Library had issued a major structural design change, that extra work had to be performed because of storm damage, that there was active interference with the construction efforts by Library representatives, and that there were additional heating and work suspension costs associated with the project.

Also, during the course of the construction project, various Library representatives discovered numerous defects with the garage structure. The Library maintained that the defects were caused by Shook and that Shook's breaches of the Agreement substantially impacted the parking garage's structural integrity. As a result of an inspection, the Library provided a "Notice of Default" to Shook's bonding company in a letter dated March 19, 2004, regarding a number of significant problems that the Library encountered as a result of the construction. In particular, this notice alleged the following defects:

1. Failure to follow plans and specifications;

2. Placement of reinforcing steel, including stirrups, in violation of American Concrete Institute Code,

Plans and Specifications, and Field Directives; and

3. Visible voids in concrete in critical areas.

Appellant's App. p. 198–200. As a result of these alleged defects, the Library suspended Shook from working on the garage on or about May 6, 2004. During this period, the Library continued its investigation and inspections in order to determine the extent of the defects. Eventually, the Library issued a directive to Shook that allowed the company to become involved in the necessary repair and remediation process.

At some point, Shook submitted a spreadsheet to the trial court summarizing twenty-five claims that were at issue and identifying the date that the Library had rejected each of its claims. The fourth column of this claim rejection spreadsheet was entitled "Shook Comment on Library Response." That column noted correspondence and other documents reflecting the Library's rejection of each of Shook's claims. The Library rejected Shook's claims at least thirty days prior to June 1, 2004, the date that Shook submitted a forum request letter.

On June 1, 2004, Shook sent the Library a letter summarizing the twenty-five previously rejected claims, requesting that the Library identify a forum in which those claims could be pursued. The final paragraph of Shook's letter stated in its entirety:

Shook requests that the Library indicate whether Shook's claims, to the extent they are disputed by the Library, "shall be submitted to a court or to arbitration."

Appellee's App. p. 116. The ten business-day period expired on June 15, 2004, without the Library having made any forum and venue selection. Hence, on June 22, 2004, Shook filed a complaint in the trial

court against the Library, claiming that it had failed to pay claims that were due in excess of $1.75 million. The claims asserted in this lawsuit mirrored those that had been previously rejected in the letter that Shook had sent on June 1, 2004. Shook's complaint also sought damages from the Library on the grounds that it had engaged in obdurate behavior.

On June 30, 2004, the Library issued a letter in response to Shook's correspondence of June 1, 2004. The letter recognized that Shook's correspondence of June 1 was a summary of claims that had been previously rejected by the Library. The first two sentences of the June 30 letter state that: "We are in receipt of your letter dated 6/1/04, Summary of Shook LLC Claims. As you are aware, we have previously responded to many of these claims." Appellee's App. p. 118. On August 30, 2004, the Library sued Shook, the company's performance bond surety, and several engineering firms that were involved with the project in Marion Superior Court.

In response to Shook's complaint, the Library filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6), claiming that the "facts and bases upon which Shook [asserted its] claims do not entitle Shook to relief," because Shook "failed to adhere to additional provisions of the Contract in asserting its purported claims against the Library." Appellant's App. p. 177. The Library also claimed entitlement to a dismissal of the complaint in accordance with Trial Rule 12(B)(1) because Shook failed to comply with the dispute resolution provisions set forth in the Agreement prior to filing the complaint. Hence, similar to the argument set forth above, the Library maintained that dismissal under this trial rule was appropriate because the "failure to follow the terms of the Contract and the premature initi-

ation of litigation, which stems from such failure, prevents [the trial court] from assuming jurisdiction." Appellant's App. p. 176–77.

In the alternative, the Library sought to have the case transferred to another venue in accordance with the terms of the Agreement and/or the provisions of Indiana Trial Rules 12(B)(3) and 75. The Library argued that under Trial Rule 75(A), preferred venue was in Marion County, "where the principal office of the defendant, a governmental organization, is located." Appellant's App. p. 177.

On October 20, 2004, the trial court conducted a hearing on the Library's motions. The trial court ultimately closed the book on the Library's motions, denying its motion to dismiss and the request to transfer the case to a different venue. We accepted jurisdiction over this interlocutory appeal on February 15, 2005.

## DISCUSSION AND DECISION

### I. Dismissal

■ The Library complains that dismissal was warranted under Indiana Rule 12(B)(6) because Shook failed to state a claim upon which relief could be granted. In essence, the Library asserts that Shook forfeited any claims that it might have had because it failed to follow the specific process for submitting claims in a timely fashion as the Agreement required. Hence, the Library contends that the exhaustion doctrine applied in these circumstances such that Shook's claims were barred. Appellant's App. p. 9.

The standard of review is well settled for motions to dismiss filed for failure to state a claim upon which relief can be granted pursuant to Trial Rule 12(B)(6). *Lawson v. First Union Mortgage Co.*, 786 N.E.2d 279, 281 (Ind.Ct.App.2003). Such a motion tests the legal sufficiency of a claim, not the facts supporting a claim. *Id.* The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* Put another way, courts look only to the complaint when determining whether any facts support the claim. *Id.* This court's review of a motion under Trial Rule 12(B)(6) is de novo and requires no deference to the trial court's decision. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1023 (Ind.Ct.App.2005), *trans. denied.*

■ As set forth in Supplemental Condition J quoted above, Shook was required to submit its claims to the Library's construction manager, who then had thirty days to approve the claim, deny it, or request additional documentation relating to the claim. When considering this language as it relates to the Library's contention that Shook did not exhaust its remedies before filing suit in the trial court, we note that the exhaustion doctrine essentially applies to cases that involve statutory or administrative remedies. *See Turner v. City of Evansville*, 740 N.E.2d 860, 861–62 (Ind.2001) (holding that a disciplined police officer was required to exhaust his administrative remedies before being allowed access to the courts). Moreover, the only non-statutory or non-administrative agency context in which the exhaustion doctrine has been found to apply involved the rules of a private association that had established a remedial procedure. *See M–Plan, Inc. v. Ind. Comprehensive Health Ins. Assoc.*, 809 N.E.2d 834, 840 (Ind.2004). In *M–Plan*, our Supreme Court observed that "[j]ust as a court will not hear a dispute with an administrative agency before the challenger has exhausted available administrative remedies, so may a dispute between an association and one of its members be subject to exhaustion of inter-

nal reviews provided by the association." *Id.* at 838.

■ Even if exhaustion of remedies is required in certain situations, it is noteworthy that our courts follow a four-part test in order to determine whether an exception might apply:

> [T]rial courts are to consider the character of the question presented and the competency of the administrative agency to answer that question; the avoidance of premature interruption of the administrative process in recognition of the interest of the agency in developing a factual record upon which to exercise its discretion and apply its expertise without the threat of litigious interference; the interest in permitting an agency to correct its own errors, a process by which unnecessary judicial proceedings are obviated; and the avoidance of deliberate or frequent flouting of established administrative processes.

*Pub. Serv. Ind., Inc. v. Nichols,* 494 N.E.2d 349, 353 (Ind.Ct.App.1986) (quoting *Northside Sanitary Landfill, Inc. v. Ind. Envtl. Mgmt. Bd.,* 458 N.E.2d 277, 280 (Ind.Ct.App.1984)).

In considering the above, it is apparent that the Library did not act in the capacity of an administrative agency responding to questions within the scope of its statutory competence when it received and acted on Shook's claims. And there is no agency administrative process implicated by the submission of claims for additional contract time or money. Moreover, the Library is not charged with developing a factual record for appellate review by a court, and there is no risk that any established administrative processes would be avoided or flouted. The claims submission provisions set forth in the Agreement are not statutorily based, and they are not a proper basis upon which to raise a jurisdictional challenge on the grounds of the failure to exhaust remedies. It is apparent to us that the "failure to exhaust" argument asserted by the Library simply amounts to a contention that Shook failed to comply with a waiting period that was set forth in the Agreement. Hence, if Shook breached the contract by filing suit before the time authorized by the contract, then the Library may have a breach of contract claim against Shook. However, when considering the allegations set forth in the complaint, we cannot say that Shook's claims against the Library could not entitle it to relief "under any set of circumstances." *See Lawson,* 786 N.E.2d at 281. Therefore, we conclude that the trial court properly denied the Library's motion to dismiss under Trial Rule 12(B)(6).

■ We now turn the page and address the Library's contentions that its motion to dismiss should have been granted in accordance with Indiana Trial Rule 12(B)(1). In a related, yet somewhat unclear argument, it is apparent that the Library is asserting that the trial court lacked subject matter jurisdiction over this case because Shook prematurely initiated this litigation as a result of the Library's failure to abide by the time period set forth in the Agreement regarding the submission of claims. More specifically, the Library's motion to dismiss for lack of jurisdiction was based on the assumption that Shook's correspondence of June 1, 2004, requesting the Library to select the forum for adjudication of Shook's claims was, in actuality, the initial submission of the claims that were summarized in this letter.

■ In resolving this issue, we first note that the party challenging a trial court's subject matter jurisdiction bears the burden of proving that jurisdiction does not exist. *Methodist Hosp. of Ind., Inc. v. Ray,* 551 N.E.2d 463, 467 (Ind.Ct. App.1990), *adopted in* 558 N.E.2d 829

(Ind.1990). Subject matter jurisdiction is the power to hear and determine cases of a general class to which the proceedings then before the Court belong. *Mishler v. County of Elkhart*, 544 N.E.2d 149, 151 (Ind.1989). When reviewing a Trial Rule 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, the relevant question is whether the type of claim presented falls within the general scope of the authority conferred upon the court by constitution or statute. *Cmty. Hosp. v. Avant*, 790 N.E.2d 585, 586 (Ind.Ct.App.2003). The trial court may consider facts outside the pleadings when ruling on a Rule 12(B)(1) motion. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994).

Here, the parties submitted affidavits and documentary evidence and presented oral argument to the trial court. Because no evidentiary hearing was conducted concerning the Library's motion to dismiss, we review the jurisdictional issue de novo. *See GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind.2001).

In light of our analysis above regarding the propriety of the Library's motion to dismiss under Trial Rule 12(B)(6), this argument has no bearing on the exercise of subject matter jurisdiction, inasmuch as our Supreme Court has recognized that our trial courts indeed have jurisdiction over contract claims. *See Austin Lakes Joint Venture v. Avon Utilities, Inc.*, 648 N.E.2d 641, 649 (Ind.1995). Hence, the allegations that the Library has advanced with regard to Shook's purported failure to comply with the notice requirements and waiting periods set forth in the Agreement do not affect the trial court's exercise of subject matter in this case. *See Avant*, 790 N.E.2d at 586 (observing that the relevant question under a Trial Rule 12(B)(1) motion is whether the type of claim presented falls within the

general scope of the authority conferred upon the court by constitution or statute). As a result, the trial court properly denied the Library's motion to dismiss on this basis as well.

## II. Transfer to Preferred Venue

### A. Transfer Under the Trial Rules

In the alternative, the Library claims that the trial court abused its discretion in refusing to transfer the case to a preferred venue. Specifically, the Library maintains that the provisions of Indiana Trial Rules 12(b)(3) and 75 required the trial court to transfer this case to Marion County because Boone County is not a preferred venue under these rules or in accordance with the Agreement.

In addressing this argument, we first note that the Library has the burden of proof in challenging venue in Boone County. Ind. Trial Rule 8(C). We review the denial of a motion to transfer venue under an abuse of discretion standard. *Halsey v. Smeltzer*, 722 N.E.2d 871, 872 (Ind.Ct.App.2000), *trans. denied*. We will find an abuse of discretion if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or if the trial court has misinterpreted the law. *Id.* Also, when the parties consent to venue in a contract, that agreement overrides the preferred venue analysis that is set forth in Trial Rule 75. *See Linky v. Midwest Midrange Sys., Inc.*, 799 N.E.2d 55, 57 (Ind.Ct.App.2003) (holding that venue in Marion County was proper based on a contract venue provision even though that county was not a preferred venue under Trial Rule 75(A)(1)–(9)).

In this case, the Library's argument regarding venue is focused on the notion that the parties, in accordance with Supplemental Condition J of the Agreement, did not

agree that Boone County was a proper forum for disputes relating to the contract. This provision is as follows:

> *Owner's Right to Select Forum.* Owner shall have the sole and exclusive right to determine whether any dispute, controversy or claim arising out of or relating to his (sic) Agreement, or breach therefore, shall be submitted to a court of law or arbitrated.... The venue of such court action or arbitration proceeding shall be in the county in which the Project is located, or in any adjacent County, as Owner, in its sole discretion, may elect to the exclusion of all other jurisdictions and venues. Contractor must make a written request to Owner to determine whether the dispute shall be submitted to a court or to arbitration. Owner shall respond to the Contractor's request within ten (10) business days after receipt thereof. Owner's response shall identify whether the matter will be submitted to a court or to arbitration, and Contractor shall submit itself to the personal jurisdiction and venue of the court or arbitration proceeding selected by Owner, to the exclusion of all other forums, jurisdictions and venue. Contractor waives any rights to contest Owner's selection of forum, including, but not limited to, any rights based upon forum non conveniens.

Appellee's App. p. 216.

In examining the above, it is apparent to us that this provision is worded such that both Shook and the Library agreed without limitation that venue would be acceptable and proper in Marion County or in "any adjacent county." Appellee's App. p. 216. To be sure, part of the Agreement provides that if the Library made an election within ten business days, the Library could choose the forum and make a choice from the acceptable venues. If the Library did not avail itself of its time-limited

right to pick the forum and venue, nothing prevented application of the portion of the Agreement indicating that venue would be proper in any of the other counties. In this case, because Boone County was one of the venues that was contemplated by the language of the Agreement, we conclude that the trial court properly denied the Library's motion to transfer venue.

### B. The Non–Waiver Clause

■ In a related argument, the Library contends that the ten-day period that the Library had to exercise its "sole and exclusive right" to select the forum and venue should be ignored in light of the "non-waiver" clause that is set forth in the Agreement. The provision that the Library points to states:

> No action or failure to act by the Owner, Construction Manager, Architect or contractor shall constitute a waiver of a right or duty afforded them under the contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

Appellant's App. p. 165. In essence, the Library is arguing that the above "non-waiver" clause should be interpreted to render meaningless the express ten-day time limit applicable to the Library's exercise of its right to select the forum and venue.

■ Notwithstanding this contention, we note that construing language in a contract that would render any words, phrases, or terms ineffective or meaningless should be avoided. *City of Lawrenceburg v. Milestone Contrs., L.P.,* 809 N.E.2d 879, 883 (Ind.Ct.App.2004), *trans. denied.* Generally, the courts should presume that all provisions included in a contract are there for a purpose and, if possible, reconcile seemingly conflicting provisions to give effect to all provisions. *Ind. Gaming Co., L.P. v. Blevins,* 724

N.E.2d 274, 278 (Ind.Ct.App.2000), *trans. denied.* Also, the contract should be read as a whole, and its terms should be interpreted to the extent that the provisions can be harmonized. *Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 717 (Ind.Ct.App.1999), *trans. denied.*

In these circumstances, the non-waiver clause cannot apply when the Agreement imposes a time limit on the exercise of a right. To be sure, the Agreement reflects the parties' specific agreement that the Library had ten days to exercise its right to select the appropriate forum and venue. To afford this specific and mandatory time limit an appropriate meaning, the time limitations must be construed as an integral part of the Library's right to select venue. This right is a limited one, and it expired when the Library failed to exercise it within the ten-day period set forth in the Agreement. Hence, the Library's interpretation of the non-waiver clause in the Agreement would erase the specific time limits. That is, the failure to act within the prescribed limitations would be unenforceable because no failure to act would constitute a waiver of the right to the action that is at issue here. Put another way, the Library's "sole and exclusive right" to select the forum and venue did not exist independent of the ten-day period set forth in the Agreement. The Library failed to act within the period of time that it had the power to exercise a right, and the right to act expired.

We also note that Supplemental Condition J does not state that Marion County becomes the sole acceptable venue if the Library fails to exercise its right to select a forum or venue within the prescribed time limits. Nor does the Agreement state that Shook is precluded from filing suit until the Library informs Shook of its decision regarding forum and venue. Inasmuch as the Library failed to respond within the ten-day time period in this instance, it follows that Shook had the choice of doing nothing or filing suit in one of the counties that the parties had agreed would be proper for purposes of venue. Hence, we do not deem the trial court's determination that Shook could file and maintain suit in Boone County upon the expiration of the Library's right to select the forum and venue as an abuse of discretion. We now end this chapter and affirm the judgment of the trial court.[1]

BAILEY, J., and MATHIAS, J., concur.

---

1. In light of our disposition of the issues discussed above, we deny the Library's request for attorney's fees in this matter. The Library has set forth no basis for an award of attorneys' fees, and we reject its argument that it "should not be required to incur attorneys' fees because of Shook's reluctance to follow the Contract and/or the Trial Rules." Appellant's Br. p. 33.