FILED

Aug 09 2018, 8:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Scott A. Norrick | Andrew F. Marquis |
| Attorney at Law, P.C. | Scopelitis, Garvin, Light, Hanson |
| Anderson, Indiana | & Feary, P.C. |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel T. O'Bryant, D.B.A. O'Bryant Transport LLC, | August 9, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 48A02-1711-PL-2709 |
| v. | Appeal from the Madison Circuit Court |
| Alan P. Adams, Luan Adams, D.B.A., A.L.A. Trucking, Inc., | The Honorable Angela Warner Sims, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 48C01-1703-PL-19 |

**May, Judge.**

[1]     Daniel T. O'Bryant, doing business as O'Bryant Transport, LLC (collectively "O'Bryant"), appeals the trial court's dismissal of its claims against Alan P. Adams and Luan Adams, doing business as A.L.A. Trucking, Inc. (collectively "ALA"). The trial court dismissed the case because the contract between O'Bryant and ALA required any litigation resulting from the parties' agreement

to be filed in Texas. Because that forum selection clause is valid and enforceable, we affirm the trial court's dismissal of O'Bryant's claims.

# Facts and Procedural History

Both O'Bryant and ALA are located in and do business in Indiana. On December 15, 2015, O'Bryant and ALA entered into an Independent Contractor Agreement ("Agreement") under which O'Bryant was to provide "transportation related services and the Equipment" in return for certain compensation by ALA. (App. Vol. II at 98.) O'Bryant agreed to provide drivers and equipment, and he was also required to ensure compliance with state laws. ALA agreed to treat O'Bryant as an independent contractor rather than an employee and to compensate O'Bryant with "80% of gross receipts and 100% of fuel surcharge, per load [after] withhold[ing] 3 cents per mile[.]" (*Id.* at 108.)

The Agreement included a forum selection clause ("FSC") that stated:

> 19. COMPLETE AGREEMENT. This Agreement, including any Appendices attached, constitutes the sole, entire, and existing agreement between the parties herein, and supersedes all prior agreements and undertakings, oral and written, expressed or implied, or practices, between the parties, and expresses all obligations and restrictions imposed on each of the respective parties during its term, except those specifically modified or changed by mutual written agreement between [ALA] and [O'Bryant]. This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Texas and in the event of any disagreement or litigation, the laws

of this state shall apply and suit must be brought in this state, except that [ALA] may bring suit against [O'Bryant] in any state where [O'Bryant] resides or is located.

(*Id*. at 105.)

On March 16, 2017, O'Bryant filed a complaint against ALA in Madison County, Indiana. On May 5, 2017, O'Bryant amended the complaint. O'Bryant alleged ALA had breached the Agreement by, instead of reimbursing O'Bryant as an independent contractor pursuant to Section 7 and Appendix B of the Agreement, O'Bryant had worked at ALA's "office, as Operations Manager, without employee salary or benefits, throughout the majority of the year 2016[.]" (*Id*. at 95.) O'Bryant alleged ALA had breached the contract "by failing and refusing to perform in good faith their promise to insure [sic] return of equity, payment for work, fees, costs and expenses." (*Id*.) O'Bryant also alleged ALA fraudulently induced O'Bryant to sign the Agreement by making "material misrepresentations" regarding the work O'Bryant was to do and the outcome of his investments. (*Id*. at 96.)

On May 26, 2017, ALA filed a motion to dismiss in which ALA asserted: 1) pursuant to Trial Rule 12(B)(2), O'Bryant's claim in Indiana was barred because the FSC controlled "regarding personal jurisdiction," (*id*. at 80) (formatting altered), and O'Bryant could only file a claim in Texas per the FSC; and 2) pursuant to Trial Rule 12(B)(6), O'Bryant's complaint failed to state a claim for which relief could be granted. While also responding with arguments about personal jurisdiction doctrines and *forum non conveniens*, O'Bryant filed an

answer to ALA's reply arguing the FSC was ambiguous and therefore permissive, rather than mandatory. O'Bryant argued that, when signing the Agreement in Indiana, O'Bryant understood the reference to "this state" in section 19 to indicate Indiana. (*Id.* at 42.) O'Bryant argued the phrase "suit must be brought in this state," (*id.* at 105), "neither identifies a venue nor contains a specific grant of exclusivity." (*Id.* at 43.) He contended that because the FSC is permissive and inadequate, the case is properly brought in Indiana, where both parties are located and do business. ALA countered that "this state," (*id.* at 105), is in the same sentence as "laws and statutes of Texas," (*id.*); thus, "this state," (*id.*), must refer to Texas and not Indiana. The trial court held a hearing on ALA's motion on August 15, 2017.

[6] On August 31, 2017, finding the parties were "all either businesses or the owners thereof," (*id.* at 14), the trial court granted ALA's motion based on its allegations under Indiana Trial Rule 12(B)(2) pertaining to jurisdiction. The trial court found and concluded:

> [O'Bryant] contends that the forum selection provision should not be enforced because it is ambiguous and permissive. However, the Court finds that the provision is unambiguous and mandatory. The provision specifically states that the agreement is drawn in accordance with the statutes and laws of the State of Texas and then refers back to the State of Texas within the same sentence by using the term "this state." The only logical conclusion to the meaning of "this state" is that it refers to the State of Texas. Furthermore, the provision uses the mandatory language "must be brought" when requiring the suit to be litigated in the State of Texas. This language "precludes the possibility of venue in any other forum." See *Coral Chemical Co.*

*v. Chemetall U.S., Inc.,* Cas No. 16-cv-23, 2016 WL 3521952, *7 (S.D. Ind. June 28, 2016).

The Court also finds that [O'Bryant] has failed to demonstrate that the forum selection provision is unreasonable and unjust under the circumstances, and that there is any evidence of fraud or overreaching. In fact, [O'Bryant] gives little attention to these elements in his responsive filings other than to make the blanket statements that the forum selection provision is (1) "based on the fraudulent conduct of [ALA]"; (2) "enforcement of that clause would be unreasonable and unjust"; and (3) "[ALA], . . . , have merely inserted that permissive clause to avoid litigation by causing inconvenience." See [O'Bryant]'s Answer to [ALA]s' Motion to Dismiss Amended Complaint, p. 2; [O'Bryant]'s Answer to [ALA's] Reply in support of Motion to Dismiss Amended Complaint, p. 7, footnote 1. These assertions alone failed to give the Court any grounds on which to find the forum selection provision unenforceable.

Moreover, the Court finds that the provision was freely negotiated.

* * * * *

Plaintiff alleges in its Amended Complaint that the parties are all either businesses or the owners thereof. Plaintiff's Amended Complaint, ¶¶ 2 and 8. Plaintiff further alleges that the parties "entered into and affixed signatures to an Independent Contractor Agreement (hereafter 'The Agreement'), included herein and attached hereto." Plaintiff's Amended Complaint, ¶ 9. Nothing in Plaintiff's Amended Complaint or responses to Defendants' Motion to Dismiss demonstrates that the parties negotiated the Independent Contractor Agreement from unequal bargaining positions. "'Because we presume that contracts represent the freely bargained agreement of the parties, we

conclude that this agreement represents the freely negotiated wishes of both parties." *Grott v. Jim Barna Log Systems-Midwest, Inc.*, 794 N.E.2d at 1102.

(*Id*. at 13-14) (errors and ellipsis in original).

[7] On September 25, 2017, O'Bryant filed a motion to correct error, alleging the same arguments it had in previous filings, together with a new argument that Texas would "not entertain a dispute over the Indiana contract in the courts of that State[.]" (*Id.* at 21.) In support of the new argument, O'Bryant's attorney submitted an affidavit stating he had contacted an unnamed attorney in Texas and been told "O'Bryant had no remedy in the State of Texas based on the fact that none of the parties maintained an operational business in that state and therefore, the State of Texas would not accept personal jurisdiction over the parties to any law suit." (*Id.* at 133.) ALA responded and noted the affidavit from O'Bryant's counsel was improper because 1) the only way to introduce new evidence with a motion to correct error is if the evidence is newly discovered and could not have been discovered and produced earlier and 2) the affidavit did not prove any truth but was merely "inadmissible hearsay and conclusory legal statements." (*Id.* at 37.) By chronological case summary notation, the trial court denied O'Bryant's motion to correct error.

# Discussion and Decision[1]

---

[1] We note, at the onset, the lack of civility, in particular on the part of O'Bryant, throughout not only the trial proceedings but the appellate proceedings. Unnecessarily argumentative and snide comments such as, "This explanation [of persuasive authority] is made for edification of Defendant, not the Appellate Court. The first

[8] O'Bryant argues the trial court abused its discretion when it granted ALA's motion to dismiss because the FSC was permissive and because the Agreement is unenforceable as it was signed under fraudulent circumstances and would deprive O'Bryant of a remedy at law. O'Bryant does not argue the trial court erred when it denied O'Bryant's motion to correct error.

[9] In its motion to correct error, for the first time, O'Bryant alleged Texas would not accept jurisdiction. A new issue may not be raised for the first time in a motion to correct error or on appeal. *Rodgers v. Rodgers*, 503 N.E.2d 1255, 1257 (Ind. Ct. App. 1987), *reh'g denied, trans. denied.* Per Indiana Trial Rule 59, a party may use a motion to correct error to present "newly discovered material evidence . . . which, with reasonable diligence, could not have been discovered and produced at trial[.]" The affidavit provided by O'Bryant's attorney could have been produced at any time during these proceedings. Therefore, we cannot say the court abused its discretion by refusing to reconsider its order (or find its judgment erroneous) on the basis of the affidavit. *See Hawkins v. Cannon*, 826 N.E.2d 658, 664 (Ind. Ct. App. 2005) (no error in denial of motion to correct error when evidence could have been discovered and produced at trial with due diligence), *trans. denied*.

is apparently unaware – while Plaintiff is sure the latter is quite aware[,]" (Reply Br. at 11 n.3), degrade the parties' arguments by showcasing the incivility between the parties. We remind counsel of sections 1 and 9 of the Preamble of the Indiana Rules of Professional Conduct, which state: "Whether or not engaging in the practice of law, lawyers should conduct themselves honorably[;]" and "[The principles of the Rules of Professional Responsibility] include the lawyer's obligation to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system."

[10] Although O'Bryant does not argue the trial court erred when it denied the motion to correct error, our standard of review for appeal of a motion to correct error nevertheless directs us to consider the underlying order, here the order granting ALA's motion to dismiss pursuant to Trial Rule 12(B)(2). *See In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (review of motion to correct error includes review of underlying order). It is proper to challenge the personal jurisdiction of a trial court with a motion to dismiss pursuant to Indiana Trial Rule 12(B)(2). *Simek v. Nolan*, 64 N.E.3d 1237, 1241 (Ind. Ct. App. 2016). The standard of review of a trial court's grant or denial of a motion to dismiss based on whether personal jurisdiction exists is *de novo*. *Sohacki v. Amateur Hockey Assoc. of Illinois*, 739 N.E.2d 185, 188 (Ind. Ct. App. 2000). When reviewing matters involving personal jurisdiction, the party challenging jurisdiction has the burden of establishing the lack thereof by a preponderance of the evidence. *Id.* Upon appeal from a motion to dismiss on grounds of lack of jurisdiction, the Court of Appeals is in as good a position as the trial court to determine whether it has jurisdiction. *Zollman v. Gregory,* 744 N.E.2d 497, 498 (Ind. Ct. App. 2001), *trans. denied*.

[11] The jurisdictional issues in this case arise from the forum selection clause found in the contract between the parties. Forum selection clauses are not *per se* invalid. *Horner v. Tilton,* 650 N.E.2d 759, 763 (Ind. Ct. App. 1995), *reh'g denied, trans. denied.* Provisions seeking to "limit the litigation of future actions to particular courts or places are enforceable if they are reasonable and just under the circumstances, and there is no evidence of fraud or overreaching such that

the agreeing party, for all practical purposes, would be deprived of a day in court." *Grott v. Jim Barna Log. Sys.-Midwest, Inc.*, 794 N.E.2d 1098, 1102 (Ind. Ct. App. 2003), *trans. denied.* The reviewing court must also determine the provision was freely negotiated. *Id.* The party claiming unfairness bears the burden of proof. *Id.*

## Permissive or Mandatory

[12] O'Bryant contends the trial court erred when it dismissed this suit because the FSC was permissive rather than mandatory. O'Bryant argues the language referencing "this state," (App. Vol. II at 105), was ambiguous. Additionally, O'Bryant argues the FSC "neither identifies a venue nor contains a specific grant of exclusivity." (Br. of Appellant at 13.) Due to these alleged deficiencies and ambiguities, O'Bryant maintains the FSC is permissive and the case need not be filed in Texas.

[13] The unambiguous language of a contract is conclusive and binding on the parties and on the court, and if the language is unambiguous, the parties' intent is determined from the four corners of the document. *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind. Ct. App. 1999), *trans. denied*. "The terms of a contract are not considered ambiguous merely because a controversy exists between the parties concerning the proper interpretation of terms." *George Uzelac & Assocs., Inc. v. Guzik*, 663 N.E.2d 238, 240 (Ind. Ct. App. 1996), *trans. denied*. "Generally, the courts should presume that all provisions included in a

contract are there for a purpose . . . ." *Indianapolis–Marion Cnty. Pub. Library v. Shook, LLC*, 835 N.E.2d 533, 541 (Ind. Ct. App. 2005).

### *"This State"*

[14] The FSC states the Agreement "shall be deemed to have been drawn in accordance with the statutes and laws of the *State of Texas* and in the event of any disagreement or litigation, the law of *this state* shall apply and suit must be brought in *this state* . . . ." (App. Vol. II at 105) (emphasis added). O'Bryant contends that because the Agreement was signed in Indiana, it understood "this state" to refer to Indiana. ALA counters that the only state listed in the clause was Texas, and therefore the only state "this state" could refer to was Texas. ALA argues O'Bryant's mistaken interpretation does not render the FSC ambiguous. The trial court agreed with ALA.

[15] We agree with ALA and the trial court. Under the *ejusdem generis* rule, "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." BLACK'S LAW DICTIONARY (10th ed. 2014). Here, the specific item is the "statutes and laws of the State of Texas," (App. Vol. II at 105), while the general term is "this state." (*Id.*) Therefore, "this state" means Texas and not Indiana, regardless of where the parties signed the Agreement. *See Westfield Companies v. Knapp,* 804 N.E.2d 1270, 1275 (Ind. Ct. App. 2004) (a pickup truck is not considered mobile equipment when "mobile equipment" is listed as including "air compressor, pumps and generators . . . or [c]herry pickers . . ."), *reh'g denied, trans. denied.* While O'Bryant may have misconstrued the meaning, under

general contract interpretation rules, it is not reasonable to interpret "this state" to mean Indiana rather than Texas. *See Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind. Ct. App. 2006) (goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in the language of the contract).

### Venue and Exclusivity

[16] O'Bryant contends the FSC does not identify a specific individual county in Texas and grant exclusive jurisdiction to that venue; therefore, it argues, the FSC is permissive and not mandatory. ALA counters the language does identify a venue and grants it exclusivity.

[17] In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991),[2] both parties were domiciled in the United States. Carnival's principal place of business was Florida, but it operated in many other states. The Shutes lived in Washington. Ms. Shute was injured while on a cruise off the coast of Mexico. The FSC in that case designated any disputes were to be litigated "before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country." *Id*. at 587-88. The FSC did not designate a county wherein a suit was required to be brought; rather, the suit merely had to be brought in Florida. The Supreme Court held the forum selection clause was valid.

---

[2] *Carnival* was a case in admiralty and, thus, not binding on Indiana state courts; nevertheless, Indiana has adopted the Supreme Court's reasoning as it pertains to the validity of forum selection clauses. *Farm Bureau Gen. Ins. Co. of Michigan v. Sloman*, 871 N.E.2d 324, 329 (Ind. Ct. App. 2007), *trans. denied.*

[18] In *Mechanics Laundry & Supply, Inc. v. Wilder Oil Co., Inc.*, 596 N.E.2d 248 (Ind. Ct. App. 1992), *reh'g denied, trans. denied*, we adopted the holding of *Carnival* regarding FSCs wherein parties have consented "by contract to the exercise of personal jurisdiction by courts that otherwise might not have such jurisdiction." 596 N.E.2d at 251. Therefore, the lack of designation of a particular county in Texas does not invalidate the FSC here.

[19] O'Bryant also argues the FSC is permissive because the word "shall" does not grant exclusive jurisdiction to Texas. In Indiana, we have held the word "shall" indicates the subsequent language is mandatory. *See, e.g., Harris v. Delaware Cnty. Div. of Family & Child. Servs.*, 732 N.E.2d 248, 249 (Ind. Ct. App. 2000) (trial rule employing the word "shall" makes the rule mandatory), *reh'g denied; Indiana Gaming Co., L.P. v. Blevins*, 724 N.E.2d 274, 278 (Ind. Ct. App. 2000) ("shall" language in agreement necessitates certain parties be included as third-party beneficiaries), *trans. denied*. Nevertheless, the FSC in this matter states not only that the Agreement was made "in accordance with the statutes and laws of the State of Texas and . . . the laws of this state *shall* apply . . . " but also that "suit *must* be brought in this state[.]" (App. Vol. II at 105) (emphases added). Therefore, because the FSC states the laws of Texas shall apply and the parties must bring suit in Texas, Texas has exclusive jurisdiction.

## Enforceability

[20] O'Bryant contends the FSC is not enforceable because it deprives O'Bryant of a remedy at law.

> "[C]ontractual provisions . . . that seek to limit the litigation of future actions to particular courts or places are enforceable if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court."

*Mechanics*, 596 N.E.2d at 250. In order to be enforceable, the FSC must be freely negotiated. *Farm Bureau Gen. Ins. Co. of Michigan v. Sloman*, 871 N.E.2d 324, 329 (Ind. Ct. App. 2007), *trans. denied.* Therefore, the FSC is required to be freely negotiated and also be just and reasonable.

### *Freely Negotiated*

> To determine whether a forum selection provision was freely negotiated, courts apply a fact-sensitive test involving a comparison of the bargaining position of the parties to the contract. A contract is unconscionable if there exists a great disparity in bargaining power between the parties, leading the weaker party to sign the contract unwillingly or without awareness of its terms. Indiana courts recognize the principle that parties are free to enter into contracts and, indeed, presume that contracts represent the freely bargained agreement of the parties. A standardized contract is not unenforceable merely because of the unequal bargaining power of the parties—there must also be a showing that the contract is unconscionable.

*Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 49 (Ind. Ct. App. 2005) (internal citations omitted).

[21] The record reveals O'Bryant and ALA are both businesses that entered into an arms-length business transaction. The trial court refers to the parties as "all either businesses or the owners thereof[,]" (App. Vol. II at 14), and that

"[n]othing in [O'Bryant's] Amended Complaint or responses to Defendants' Motion to Dismiss demonstrates that the parties negotiated the [Agreement] from unequal bargaining positions." (*Id*.) O'Bryant does not argue this assertion is incorrect. When parties are on equal footing, "the law will not protect one who fails to exercise common sense and judgment." *Plymale v. Upright*, 419 N.E.2d 756, 762 (Ind. Ct. App. 1981).

[22] In its brief, O'Bryant makes some blanket statements that ALA misrepresented facts as to recompense, but it does not argue it was unable to negotiate the FSC or that it had to accept the contract as written. The question of recompense is not before us—only the question regarding the applicability of the FSC is before us. O'Bryant makes no claim that it objected to the FSC or tried to omit it. Rather, O'Bryant simply argues it misunderstood the FSC to mean any litigation would occur in Indiana, rather than Texas, without arguing ALA had affirmatively stated that to be the case. Therefore, O'Bryant has not demonstrated it was unable to negotiate the FSC. We have no reason to upset the bargained-for language of the parties, and we conclude the FSC was freely negotiated and is enforceable. *See Grott*, 794 N.E.2d at 1103 (without evidence from complainant otherwise, reviewing court has no reason to assume the contract language was not freely negotiated).

### Just and Reasonable

[23] O'Bryant asserts the FSC is unjust and unreasonable as it would deprive O'Bryant of its day in court and be against public policy because neither O'Bryant nor ALA are located in Texas. O'Bryant appears to be arguing Texas

is an inconvenient forum or it has insufficient contacts with Texas for Texas to acquire personal jurisdiction over it. However, those issues are not available to O'Bryant because O'Bryant signed the contract and consented to jurisdiction in Texas. As noted above, O'Bryant has not shown it was unable to negotiate the terms of the agreement.

[24] To avoid litigation in Texas, O'Bryant must prove that holding trial in Texas will be "so gravely difficult and inconvenient that [it] will, for all practical purposes, be deprived of [its] day in court." *Horner*, 650 N.E.2d at 763-64 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19 (1972)). In *Carnival*, although the Shutes were located in Washington and the cruise they took was along the west coast of the United States, the Supreme Court held that venue in Florida was not enough of an inconvenience to make the FSC unjust or unreasonable. *Carnival*, 499 U.S. at 595. While we recognize neither ALA nor O'Bryant is located in Texas, the fact remains that two business entities agreed to litigate any disagreements in Texas. If the Shutes, unsophisticated parties who agreed by signing a non-negotiable form contract, cannot show litigation in another State is sufficiently inconvenient to make the FSC unenforceable, we cannot hold this seemingly knowledgeable business entity, with the power and ability to negotiate the terms of the contract, can simply assert Texas, an agreed-upon forum, is too inconvenient to be reasonable and just.

[25] As to O'Bryant's contention it would be deprived its day in court, we again note O'Bryant waived that argument by not asserting Texas would not accept jurisdiction until it filed its motion to correct error. *See Rodgers*, 503 N.E.2d at

1257 (a new issue may not be raised for the first time in a motion to correct error or on appeal).

# Conclusion

As the trial court did not err when it dismissed O'Bryant's claim due to the FSC in the Agreement, the court did not abuse its discretion when it denied O'Bryant's motion to correct error. We therefore affirm.

Affirmed.

Riley, J., and Mathias, J., concur.